J-A04029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.H.E., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.M.P., | |
| Appellant | No. 1396 WDA 2015 |

Appeal from the Order August 13, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2014-807-CD

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 19, 2016**

K.M.P. (Mother) appeals from the August 13, 2015 order that awarded R.H.E. (Father) primary physical custody of M.R.E. (Child), born in July of 2010, and partial physical custody to Mother.  The parties were awarded joint legal custody.  After review, we affirm.

This matter began when Father filed a complaint for custody on June 3, 2014.  Up until that time, by agreement, the parties shared physical custody of Child on an alternating week-on-week-off basis.  "However, as the Child approached school age, because they live[d] in different school districts, the parties [were] unable to reach a mutual agreement regarding primary physical custody."  Trial Court Opinion and Order (TCOO), 8/13/15, at 1.  A custody hearing was eventually held before the trial court on July 15, 2015.  Father testified on his own behalf, and presented the testimony of

C.E., his wife, B.E.C., his mother, and D.P., his paternal aunt. Mother testified on her own behalf, and presented the testimony of Y.P., her mother.

In its decision, the trial court discussed the factors listed at 23 Pa.C.S. § 5328(a)(1) – (16), arriving at the conclusion that Father and Mother should share legal custody of Child, but that Father should have primary physical custody with Mother having periods of partial physical custody. Specifically, the court ordered that during the school year, Father would have primary physical custody with Mother having "partial physical custody every weekend in which she is not obligated to attend military duty." TCO at 11. "During the summer months, … Mother shall have physical custody with the exception of the two week period in which Mother is obligated to attend annual military training." *Id.*

Mother filed a timely appeal accompanied by a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). She raises the following issues for our review:

I. Whether the trial court erred by misapplying the statutory factors to the evidence presented at the custody trial[?]

II. Whether the trial court erred by granting Father primary physical custody of the minor Child due to a perceived advantage over Mother in a few of the statutory factors, when in fact this conclusion was not supported by the evidence presented at the custody trial[?]

III. Whether the trial court erred by granting Father primary physical custody of the minor Child when he works away from

home and his schedule makes him unavailable for weeks at a time[?]

Mother's brief at 4.

When presented with child custody matters, we are guided by the following scope and standard of review:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.* 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Furthermore, we note that:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.
>
> *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citing **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004)). Furthermore, we recognize that the Child Custody Act (Act), 23 Pa.C.S. §§ 5321-5340, governs all proceedings commenced after January 24, 2011. The specific factors that a court must consider are listed at 23 Pa.C.S. § 5328(a)(1) – (16). **See E.D.**, 33 A.3d at 79-80 (holding that "best interests of the child" analysis requires consideration of all section 5328(a) factors).

To begin, we quote the court's discussion relating to the factors that are in controversy.

> The Court will first examine who is more likely to encourage and permit contact between Child and the other party. 23 Pa.C.S. § 5328(a)(1). The Court feels that both parties are open to encouraging contact between [] Child and the other party. In fact, up until the present time, the parties have been amicably sharing custody of [] Child and both parties have testified that they would permit frequent contact between [C]hild and the other party. Father has demonstrated that he is committed to encouraging contact between [] Child and the other party and her family by inviting [] Child's maternal grandmother to [] Child's birthday party in the past. While the Court feels that both parties will permit frequent and meaningful contact between [] Child and the other party, based on the evidence offered at the hearing, this Court finds that this factor tips in Father's favor.
>
> . . .

The Court must correspondingly consider the parental duties performed by both parties and which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with Child. 23 Pa.C.S. § 5328 (a)(3), (9). These factors weigh equally for each parent. It appears to the Court that both parties love and care for [] Child and that both parties adequately perform their parental duties on behalf of [] Child when [] Child is in each party's respective care. Ample evidence was offered to indicate that both parties are involved in [] Child's upbringing.

. . .

The Court must examine which parent can better provide stability and continuity in the Child's education, family life, and community life. 23 Pa.C.S. § 5328(a)(4). [] Child has spent a roughly equal amount of time with each parent, to the extent that their schedules would permit. [] Child appears to be benefitting from frequent contact with both parents. However, because the parents live in separate school districts, a more permanent custody arrangement must be reached.

Both parents have stable careers. This also includes Father's wife. Both parents appear to have established roots in the communities in which they live. However, Father appears to be able to provide a slightly more stable educational, familial, and community life for the Child. Father owns his home in the West Branch Area School District where he attended school and he has held the same steady employment for years. Father is also a volunteer coach for the wrestling team and is very involved in his community. This factor weighs in Father's favor.

. . .

Additionally, the Court must consider which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child. 23 Pa.C.S. § 5328 (a)(10). [] Child is doing well in school and developing well physically, emotionally, and mentally.[1] Testimony was offered to indicate that each parent is engaged in [] Child's educational, developmental, physical, and emotional needs when in their custody. Mother has taken a very proactive approach to [] Child's education; and Father's work schedule permits him to be

- 5 -

available for the Child for much of the school year. On balance, this factor weighs equally for each parent.

> [1] No testimony [was] offered as to the educational benefits of one school district over the other.

> . . .

The Court, in determining custody, also takes into consideration the availability of the parties' extended family and the child's sibling relationships. 23 Pa.C.S. § 5328(a)(5)[,] (6). [] Child has no siblings, however, [] Child does have extended family on Mother's side in the Summerville area and even more extended family on Father's side in the Morrisdale/Clearfield County area. Both extended families appear to be involved in [] Child's life. Accordingly, this factor tips in Father's favor.

> . . .

The Court must also examine the parties' abilities to make the appropriate childcare arrangements. 23 Pa.C.S. § 5328(a)(12). Both parties appear to be able to make appropriate child care arrangements when the Child is in their care.

At the custody trial, much was made of Mother's service in the Pennsylvania Army National Guard; particularly the possibility that she may or may not be deployed in the future.[2] The Court will not fault Mother, or place her at a disadvantage, for maintaining a career in the armed services. To the contrary, Pennsylvania law prohibits the consideration of a parent's absence due to a prior military deployment in a best interest analysis with respect to child custody. See 51 Pa.C.S. § 4109. Indeed, if the Court is statutorily prohibited from considering past deployments, it is certainly logical for the Court to refuse to consider the speculative prospect of a future deployment from its current analysis. In fact, testimony was offered to indicate that Mother has made suitable child care arrangements to attend to [] Child's needs while she is at work and that she has a family care plan, as required by the military, in place should she be deployed.

[2] It must be noted that no evidence was offered to suggest that Mother's military unit is scheduled to be deployed at any time in the future.

Father is also able to make appropriate child care arrangements. Though his work takes him away from time to time, he has been able to ensure that [] Child is cared for in his absence either by his wife, or other family members.

The Court believes that both parents are doing their best to take care of Child and make sure that they have appropriate supervision and care during their absences. Indeed, the Court finds that the child care arrangements of each party are suitable. Thus, this factor thus weighs equivalently in favor of both parties.

. . .

The Court must also scrutinize how the location of the parties' residences will affect custody of [] Child. 23 Pa.C.S. § 5328(a)(11). Father lives with his wife in Morrisdale, PA. Mother lives in Summerhill, Cambria County, PA. The parties' residences are approximately 70 miles apart. Custody exchanges do not appear to have been a problem in the past.

. . .

The Court must also examine the level of conflict existing between the parties. 23 Pa.C.S. § 5328(a)(13). For the most part, the parties have been able to cooperate and effectively co-parent [] Child. Though there was some evidence offered at trial to suggest some discord between the parties, by and large, the parties appear to be making a mutual effort to cooperate with each other in the best interest of [] Child. Accordingly, this factor weighs equally for each parent.

TCOO at 4-9.

In her brief, in relation to her first issue, Mother lists the section 5328(a) factors, setting forth her disagreement with the court's conclusion as to which factors favor which parent. Specifically, Mother contends that

with regard to factor (1), she has been the primary caretaker and would encourage Child's frequent contact with Father. She also cites Father's "lack of routine employment hours[,]" which requires that Child be left with various caregivers. Mother's brief at 8. Mother also asserts that the court's reliance on the fact that Father invited maternal grandmother to Child's birthday party is an insufficient reason to favor Father under this factor.

Although Mother acknowledges that the court weighed factor (3) equally, she contends that Father's unavailability on a regular basis due to his work leaves much of the parental duties to Father's wife. As to factor (4), Mother contends that she has prepared and taken steps to ensure Child's education, while Father has not done so on a regular basis. Therefore, Mother asserts that factor (4) should have favored her rather than Father. Acknowledging that Child has no siblings, factor (6), and that both parents have extended family in the area in which each lives, factor (5), Mother takes issue with the court's conclusion that this factor favors Father. Mother relies on the fact that Child's maternal grandmother works at the school district that Child would attend if Mother was granted primary custody, and notes that the court did not mention this fact or anything about the maternal grandmother's relationship with Child.

With regard to factor (9), the court found that both parties maintain a loving, stable environment for Child, but Mother again contends that this factor should weigh in her favor because of Father's work schedule, requiring others to care for Child in his stead. As for factor (10), which the court

found to weigh equally between the parties, Mother asserts that she is "more likely to attend to the daily physical, emotional, developmental, educational and special needs of [Child]." Mother's brief at 14. Mother identifies her enrolling Child in Learning Lamp Preschool, which contracts with the Forest Hills School District for afterschool care, thus, providing Child with a schedule to which Child has become accustomed and would continue if Mother were awarded primary physical custody. Mother also points out that Father and his wife work in State College, a thirty-minute trip from their home, while her employment is situated close to Child's school and, thus, in case of an emergency, she would be immediately available. As for factor (11), Mother acknowledges that the parties live about 70 miles apart, but emphasizes that the parties met and lived in Cambria County, that is where Child was born, but that Father was the one who moved away from the area when the parties separated. Again, regarding factor (12), Mother discusses Child's enrollment with the Learning Lamp Preschool and thus, the ability to maintain consistency with Child's caregivers. She also reiterates Father's unavailability due to his work schedule.

In connection with factor (13), Mother counters the trial court's statement that "by and large, the parties appear to be making a mutual effort to cooperate … in the best interest of [] Child." TCOO at 9. Essentially, Mother points to allegation that Father "fail[s] to answer her telephone calls[,] … inform her of medical appointments" or advise her about taking Child out of state for vacations. Mother's brief at 18. Lastly, Mother

discusses Child's having been bitten by a dog while in Father's custody. She also references Father's admission that he and his wife have "walk[ed] around naked in [] [C]hild's presence" and that "his wife showers with [] [C]hild." *Id.* at 19.[1] Thus, for all these reasons Mother asserts that "Father did not demonstrate that he should be awarded primary physical custody of the minor [Child]." *Id.* Rather, she claims that she "met her burden of proof and demonstrated that primary physical custody of [] [C]hild to Mother is warranted." *Id.* at 19-20. Accordingly, Mother contends that the court did not properly apply the sixteen custody factors.

Essentially, Mother's argument centers on her contention that none of the factors in section 5328(a) favor Father, which is contrary to the trial court's conclusions. In addressing each of the factors, she cites evidence that is most favorable to her. However, based upon our review of the record, we conclude that the trial court not only considered all relevant factors, but we also note that its findings are supported by the record. Mother is basically requesting that we reject the trial court's findings and credibility determinations and accept the findings that she proposes. We cannot do so. Rather,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with

---

[1] Mother acknowledges that the court ordered that neither party nor any members of their respective households are to shower with Child. *Id.* at 19.

regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

*J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). Therefore, Mother's first issue provides her no relief.

Mother's other two issues also relate to the trial court's findings and credibility determinations, resting to a great extent on Father's work schedule, which Mother asserts "gave custody to [] [C]hild's step-mother and [Father's] extended family…." Mother's brief at 20. Mother claims that the trial court did not address Father's unavailability and for this reason alone, its decision should be vacated. Interestingly, Father points out that Mother does not mention that Father's work is seasonable and that he is not working during a four-month period during the school year (December through March). Furthermore, since both parents work it is obvious that they both must rely on others to provide childcare. Clearly, this was a difficult decision for the trial court in that both parents are good, hard-working people who love their Child and find themselves in a difficult situation. As this Court has stated "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *E.D.*, 33 A.3d at 76. Because we do not determine that the trial court's conclusions are unreasonable in light of the sustainable findings, we are compelled to affirm the trial court's decision. Mother has not convinced us otherwise.

Order affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/2016