J-S47031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C.N.K., J.R.C., AND R.B. | |
| v. | |
| D.E.B. | |
| APPEAL OF: J.R.C. | |
| | No. 141 MDA 2016 |

Appeal from the Order Dated December 22, 2015
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2011-5951

BEFORE: SHOGAN, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:　　　　　　　　**FILED AUGUST 04, 2016**

J.R.C. ("Father") appeals from the December 22, 2015 order[1] denying his petition to relocate the parties' minor child. After our review, we affirm.

_____

[1] C.N.K. ("Mother") and B.K. ("Maternal Grandmother") are also involved in a separate custody action involving Mother's other child (M.B.) from another man. Child and M.B. see each other one weekend each month and one Wednesday each month. Although the docket number in that case was consolidated below with the docket number in the instant matter, it is an unrelated action. The fact that a custody modification action is pending in that unrelated action presents no jurisdictional issue in the instant case. **See** Pa.R.A.P. 341. **See also Kincy v. Petro**, 2 A.3d 490, 493-96 (Pa. 2010) (Supreme Court held language of consolidation order not controlling as to whether complete consolidation has occurred; Court stated: "[S]eparate actions cannot be consolidated to the extent the actions lose their separate identities and become a single action[, i.e.,] "complete consolidation[,]"—unless the actions involve the same parties, subject matter, issues, and defenses." **Id.** at 494. "Although the language of Rule
*(Footnote Continued Next Page)*

Father has primary physical custody and sole legal custody of the parties' seven-year-old son, J.E.C. ("Child"). Maternal Grandmother has partial physical custody every other weekend. Mother's custody is subject to supervision by Maternal Grandmother.[2] *See* Order, 11/3/14, ¶¶ 5-7.

On September 28, 2015, Father filed a notice of intention to relocate Child. Father and his wife, as well as their four-year-old son, sought to relocate with Child to Columbus, Ohio. The court held a relocation hearing on November 17, 2015 and December 9, 2015. At the hearing, Father stated that his primary reason for relocation was the opportunity for a job where he would have weekends off and the potential to earn approximately $20,000-$30,000 more each year. Father, who is a commercial truck driver,

*(Footnote Continued)* _____

213(a) suggests that a court may order actions consolidated when the actions involve a common question of law or fact, or arise from the same transaction or occurrence,[ ] the second option for consolidation under Rule 213(a) . . . is distinct from [ ] complete consolidation. *Id.*").

[2] Mother has a history of drug and alcohol abuse and mental illness. In November of 2011, the court granted Maternal Grandmother emergency custody of Child. At that time, Father, who also struggled with opioid addiction, did not have a relationship with Child, but he ultimately overcame his addiction and eventually gained primary physical custody of Child as well as sole legal custody. Father has been sober since January 6, 2010. *See* N.T. Relocation Hearing, 11/17/15, at 52. In 2014, Mother was convicted of possession of a Schedule I controlled substance (heroin) and was sentenced to twelve months' supervised probation. Mother has admitted to using heroin in Child's presence. *See* N.T. Relocation Hearing, 12/9/15, at 46. As of the date of the relocation hearing, Mother testified that she has been sober (both alcohol and heroin) for over one year, had completed an intensive outpatient rehabilitation program, had weekly drug testing, and was consistently attending NA and AA meetings twice each week. *Id.* at 36-38.

stated he wished to spend more time with Child and his family. This opportunity would also enable his wife, a certified nurse assistant, to stay home with the children and the new baby they were expecting. N.T. Hearing, 11/17/15, at 38-39, 48. As the court noted, however, there was no specific information or corroboration of a definite salary increase; the September 23, 2015 letter from Father's employer, which he attached to his Amended Notice of Proposed Relocation, reads: "This move, however, will allow you to advance within our company and *increase your earning potential* to $88K per year." **See** Amended Notice of Proposed Relocation, 10/7/15, Exhibit A (emphasis added). Father also explained that he had extended family in the Columbus area, including aunts, uncles and cousins, and that they would be a support system for him and his family. **Id.**

The court heard testimony from Mother, N.T. Hearing, 12/9/15, at 34-69, and Maternal Grandmother. **Id.** at 69-90. Both Mother and Maternal Grandmother opposed the relocation, and both questioned Father's motive. Mother stated that she thinks Father and his wife do not want her to do well; "I think that now that I am, they are trying to take [Child] out of my life." **Id.** at 41. Mother also testified that Father was "mentally and physically abusive" toward her, and that as a result she was later diagnosed with Post-Traumatic Stress Disorder. **Id.** at 43. However, Mother testified that she never filed for a Protection From Abuse order. **Id.**

Mother and Maternal Grandmother currently live in close proximity to Father. They see Child every other weekend and Wednesdays. They also attend Child's sporting events and school events when possible.

Father explained his proposed custody schedule, stating that it would include 48 overnights, as compared to the current schedule of 52 overnights. N.T. Hearing, 11/17/15, at 18. He also pointed out that Maternal Grandmother had family in Ohio, that she had traveled to Ohio in the past to visit family, and that she would be permitted to see Child in that instance. *Id.* at 17-18.

The court questioned Child in chambers. N.T. Hearing, 12/9/15, at 98-116. Although Child is only five years old, his answers were appropriate and they indicated that he understood the questions. Child stated he would feel "bad" if he saw Maternal Grandmother less than he currently does. *Id.* at 113.

On December 22, 2015, the trial court denied Father's petition for relocation. Father appealed. He now raises the following issues for our review:

> 1. Whether the trial court erred when it failed to consider all seventeen (17) child custody factors pursuant to [23 Pa.C.S.] § 5328(a).
>
> 2. Whether the trial court erred when it failed to notify trial counsel of its opinion regarding the ten (10) relocation factors pursuant to [23 Pa.C.S.] § 5337(h) until after the deadline for the notice of appeal had run.

3. Whether the trial court erred and/or abused its discretion when it failed to apply and/or misapplied the child custody and relocation laws by reaching a manifestly unreasonable result that is not supported by competent evidence.

Our scope and standard of review regarding child custody matters is as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010) (citations and quotation marks omitted).

Father first claims the trial court erred in failing to address the custody factors set forth in 23 Pa.C.S. § 5328(a). This claim is meritless. The court had already granted Father primary physical custody and sole legal custody of Child. Father did not seek modification of the custody order to relocate; in fact, Father explained his proposed custody schedule would include 48 overnights, as compared to the current schedule of 52 overnights. *See* N.T. Hearing, 11/17/15, at 18. Father acknowledged that Maternal Grandmother's partial custody rights would be essentially the same. The

court did not order a new form of custody, nor did either party seek as much. *Cf. A.V. v. S.T.*, 87 A.3d 818 (Pa. Super. 2014) (court required to consider statutory child custody factors as well as statutory relocation factors where mother's proposed relocation would change father's *shared* physical custody to *partial* physical custody). Because we find that the proposed relocation would not have significantly impacted the parties' custody arrangement, we find no error.[3]

In his second issue, Father argues the court erred in failing to notify counsel of its opinion regarding the ten relocation factors until after the 30-day appeal period had run. *See A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013) (section 5323(d), which provides trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order,]" applies to cases involving custody and relocation). The trial court entered its order denying relocation on December 22, 2015, and issued an Opinion on January 19, 2016. However, the court, in error, mailed that

---

[3] We acknowledge that the case of *A.M.S. v. M.R.C.*, 70 A.3d 830 (Pa. Super. 2013) states that the trial court "must consider all ten relocation factors and all 16 child custody factors when making a decision on relocation *that also involves a custody decision*." *Id.* at 836 (emphasis added). In *A.M.S.*, in addition to Mother's relocation petition, both parties filed custody complaints. Where modification of custody is not at issue, consideration of both sets of factors is not required, especially where, as here, the relocation would not have a significant impact on the other party's custody time. As noted above, the relocation, had it been granted, would have altered the pattern of Maternal Grandmother's custody time, but would have had only a slight impact (4 days) on the amount of Maternal Grandmother's custody time.

Opinion on January 19, 2016 to the incorrect parties. Nonetheless, since Father's attorney did file a timely notice of appeal on January 22, 2016, and the trial court reissued its opinion and mailed it to the correct parties on February 8, 2016, we discern no prejudice to Father's appeal rights. The two-week delay did not interfere with Father's ability to articulate his claims on appeal, nor did it interfere with this Court's appellate review. Accordingly, we find no error.

In his final claim, Father argues the trial court erred or abused its discretion in misapplying the relocation factors and reaching a manifestly unreasonable result, which is unsupported by competent evidence. We disagree.

Our analysis begins with section 5337 of the Child Custody Act, 23 Pa.C.S. §§ 5321 *et seq.* ("the Act"), which sets forth the procedures and standards for relocation requests. The Act defines "Relocation" as "[a] change in residence of the child which significantly impairs the ability of a non-relocating party to exercise custodial rights." 23 Pa.C.S. § 5322(a); ***C.M.K. v. K.E.M.***, 45 A.3d 417, 422 (Pa. Super. 2012). The Act requires the trial court to consider the following in a relocation proceeding:

> **(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
>> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to

relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(a)-(d)(h).

Moreover, the party proposing relocation has the burden to prove that relocation will serve the child's best interest. *See* 23 Pa.C.S. § 5337(i). Each party, however, has the burden of establishing "the integrity of that

party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

Here, the court delineated each of the ten relocation factors and provided a detailed analysis under each factor. Based on a thorough review of the record and the relocation factors contained in section 5337(h), as discussed below, we conclude that Father did not meet his burden of showing that relocation was in Child's best interest.

The court recognized Father has had primary custody and sole legal custody for three years; the court noted that due to Mother's unavailability because of her addiction, her relationship with Child is not nearly as strong as Father's and Maternal Grandmother's relationships with Child. The court found Child's ties with Father, his Maternal Grandmother and maternal family living in the Camp Hill area were stronger than Child's ties with the paternal extended family in Columbus, Ohio. The court also noted that Maternal Grandmother lives in close proximity to Father, making custody exchanges flexible and frequent, and availing Maternal Grandmother and Mother the opportunity to attend Child's school and sporting events. *See* 23 Pa.C.S. § 5337(h)(1), (3).

The court interviewed Child. The court noted that Child stated that he would like to see Maternal Grandmother "more" and that seeing her less would make him feel "bad" because he "always miss[es] her." N.T. Hearing, 12/9/15, at 112-13. Even though Father proposed almost the same number of "overnights," those periods of custody would not be on a consistent week-

to-week basis, but rather, interspersed for longer periods throughout the year. There is every reason to believe that relocation would compromise Child's close bond with Maternal Grandmother, on which Child relies, and any developing bond with Mother. *See* 23 Pa.C.S. § 5337(h)(2), (4).

Overall, there did not appear to be a pattern of conduct by either Father or Maternal Grandmother to thwart the other party's relationship with Child. The court noted that both parties provided stability and well-being to Child, especially in light of Mother's addiction issues. *See* 23 Pa.C.S. § 5337(h)(5).

With respect to enhancing the quality of life, the court acknowledged that the job opportunity upon which Father based his relocation request would increase Father's salary and allow him more time off on weekends; this would clearly enhance Father's and Child's quality of life. However, the court found that the letter was insufficient to support the relocation request. Father presented no witness to corroborate the letter or the opportunity and salary potential presented in that letter. *See* 23 Pa.C.S. § 5337(h)(6), (7).

The court determined that Father was sincere in his motive to relocate, which included an increased salary potential and the possibility of spending more weekend time with Child. The court also determined Maternal Grandmother and Mother were sincere in their opposition, knowing it would alter their time and opportunities with Child, and potentially their relationships with Child. *See* 23 Pa.C.S. § 5337(h)(8).

Mother did testify that Father had been abusive to her in the past, and that she suffered from post-traumatic stress disorder as a result. However, the court noted that Mother gave no specific examples. The court found that neither Father nor Maternal Grandmother posed a threat to Child, and that as long as Mother remained sober and supervised, she as well posed no threat to Child. 23 Pa.C.S. § 5337(h)(9).

Lastly, with respect to the final relocation factor, "any other factor affecting the best interest of the child," the court stated:

> Given the Father's past drug abuse, and Mother's past drug abuse and continuing struggles with overcoming such drug addictions, the Court gave great weight to the stability that the Maternal Grandmother, extended family of Mother and Father and current wife of Father can provide to the Child in a joint effort. As mentioned previously, Father has made great strides in his life and has been rewarded by having a better relationship with the Child and being [his] primary custodian[.] This Court's denial of his relocation request is not to penalize Father, but rather to encourage Father to be even more responsible in obtaining specifics and considering cautiously how large decisions may affect the best interest of the Child. In the event that Father does so in the future, this Court would again consider a petition if Father had to relocate to obtain better employment. Nevertheless, the Court hopes that Father is able to obtain such opportunities in such a location as to allow the Child's relationship with extended family in this area to flourish also. If the Father continues in his positive direction in his life, this Court has reason to believe that Father will be afforded such an opportunity in the near future.

Trial Court Opinion, 2/10/16, at 17-18.

After our review, we find no error or abuse of discretion. *A.D. v. M.A.B.*, *supra*. The court's findings are supported in the record. Further,

- 11 -

the court's conclusion that Father did not meet his burden of establishing that relocation was in Child's best interest is reasonable in light of the court's findings. *See S.J.S. v. M.J.S.*, 76 A.3d 541, 551 (Pa. Super. 2013). Therefore, we see no reason to disturb the court's decision to deny Father's petition for relocation.

Order affirmed.

JENKINS,J., Joins the memorandum.

SHOGAN, J., files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016