989 A.2d 32 (2010)
A.D.
v.
M.A.B., Appellant.
No. 1883 EDA 2009.
Superior Court of Pennsylvania.
Submitted October 5, 2009.
Filed February 1, 2010.
*33 Martha Gale, Erdenheim, for appellant.
James McGarrity, Philadelphia, for appellee.
BEFORE: STEVENS, BOWES, and FITZGERALD,[*] JJ.
OPINION BY FITZGERALD, J.:
¶ 1 M.A.B. ("Father") appeals from the order entered in the Philadelphia County Court of Common Pleas, which declined jurisdiction in this child custody matter in favor of the courts of the State of Michigan upon reconsideration of the trial court's order of February 23, 2009, as requested by A.D. ("Mother"). We hold that the trial court considered and properly weighed all the relevant factors for inconvenient forums pursuant to 23 Pa.C.S. § 5427. Accordingly, we affirm.
¶ 2 The parties are the parents of a daughter, F.B. ("Child"), d.o.b. 2/21/01. Mother and Father were never married. Father has eleven children by two other women, one of whom is his legal wife. Mother was Father's third Muslim wife, not his legal wife. Mother's Muslim marriage to Father has been religiously terminated. At the time that Child was born, Mother was a recent immigrant to the United States with a valid green card. When Child was approximately six months old, Mother and Father separated permanently after a violent confrontation. During that confrontation, Mother suffered a wound to her face that required seventeen stitches.[1] Child was sent to live with her maternal grandmother in Africa for three months after the parties separated. N.T., 6/4/09, at 17. It is undisputed that Child *34 has not been present in Pennsylvania or had any contact with this Commonwealth since that time. According to Mother's counsel, Mother was reunited with Child in Tennessee and then "fled and ended up in Detroit, Michigan," when "she was discovered [by Father] in Memphis, Tennessee." N.T., 6/4/09, at 18.
¶ 3 Mother filed an action in Pennsylvania seeking custody of Child on September 6, 2001. The result of that proceeding, where both parties were represented by counsel, was an agreed-upon order, entered March 14, 2002, that granted sole legal and physical custody to Mother and provided that Father would not be obligated to pay support for two years. The order also permitted Mother to leave the Commonwealth with Child and provided further, in pertinent part:
5. Father may petition for visitation in the future, but he agrees that he shall not do so against Mother until at least two years after the signing of this agreement.
* * *
7. In the event that Father does wish to petition to see [Child] in the future, as specified in the time frame above, he may do so in Philadelphia. . . . If for any reason it is necessary for Mother to return to Philadelphia to participate in the litigation, then Father agrees to pay for Mother's travel costs.
Order, filed 3/14/02. On February 6, 2008, Father filed a petition for modification of the March 14, 2002 custody order. Father does not dispute the fact that he has had no contact with Child from the day she left his home at the age of six months. He did not visit her, call her, or write to her.
¶ 4 At a hearing on Father's petition in November of 2008, a question arose concerning the content of the file with the Philadelphia Department of Human Services ("DHS") relating to Father's two older daughters. Mother alleged that the two girls were removed from Father's home sometime in 2004 because Father abused them physically, raising concerns for Child's safety on the part of the trial court. It was agreed by the parties that the DHS file would be brought to court and reviewed by both counsel on January 15, 2009. The file was not made available on that date and DHS failed to respond to a subpoena to deliver the file to court for a hearing on February 23, 2009. At that hearing, from chambers, the trial judge called DHS and made arrangements for counsel to review the file at DHS. An order was entered by agreement on that date, without prejudice to the question of jurisdiction, that would have permitted Child to visit in Philadelphia on March 21 and 22, 2009, unless the trial court modified the order after a review of Father's DHS file.
¶ 5 Also at the February 23 hearing, the trial court provided both counsel with copies of a Custody Probation Officer Home Investigation Report regarding Father, dated February 13, 2009. In the report, the probation officer stated that Father told him two older daughters were removed from Father's home for approximately two years after DHS received reports that Father disciplined the girls by what Father described to the probation officer as spanking. The probation officer related in the report that Father told him he did not consider his behavior abusive because it is acceptable to discipline children that way in his home country of Guinea, in West Africa. Father does not dispute the content of that report.
¶ 6 Both counsel were subsequently able to review the complete DHS file together on March 6, 2009. We will not, however, consider the allegations or the arguments, findings, and conclusions based on the *35 DHS file because only the Home Investigation Report, and not the DHS file, was made part of the record currently before this Court.
¶ 7 After viewing the DHS file, Mother filed a petition for reconsideration of the February 23, 2009 order concerning visitation and requesting that the trial court decline jurisdiction. The trial court granted reconsideration in an order entered March 20, 2009. At argument on Mother's petition, Mother's counsel explained the March 14, 2002 agreement provided that no modification would be filed within the first two years and provided for no support payments because Mother "walked away from the money just to get away from him and to get a two-year head start from him." N.T., 6/4/09, at 6. Father's counsel explained Father's additional delay of five years in seeking modification, beyond the two years provided in the agreement, by stating it is Father's religious belief that "all children belong to their [m]other until they are seven. Once they are seven, it's time that Father steps in and has a role in their life, and that's what he wants to do now." Id. at 51.
¶ 8 After hearing argument on the issues surrounding Father's relationship with Mother, allegations regarding Father's abuse of his other daughters, and the circumstances relating to jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482, the trial court found that jurisdiction lies with the State of Michigan and entered the instant order declining jurisdiction in Pennsylvania. This appeal followed.[2]
¶ 9 Father raises the following questions on appeal:
A. Whether the Court below committed an error of law and/or abuse of discretion by declining to maintain jurisdiction in Philadelphia County pursuant to Uniform Child Custody Jurisdiction and Enforcement Act?
B. Whether the Court below committed an error of law and/or abuse of discretion when it entered the June 4, 2009 Order declining jurisdiction where the parties had specifically entered into an Agreement to maintain jurisdiction in Philadelphia County and an Order based on that Agreement was entered by Judge Idee Fox on March 22, 2002?
C. Whether the lower Court committed an error of law and/or abuse of discretion in determining the issue of jurisdiction when it relied in making his decision on irrelevant arguments of Appellee's counsel as to Appellant's past conduct, without a scintilla of evidence before it?
Father's Brief, at 4.
¶ 10 In Collins v. Collins, 897 A.2d 466 (Pa.Super.2006), this Court explained our standard of review of custody matters as follows:
In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. Johns v. Cioci, 865 A.2d 931, 936 (Pa.Super.2004). We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. Id. In addition, with regard to issues of credibility and weight of the evidence, we must *36 defer to the presiding trial judge who viewed and assessed the witnesses first-hand. Id. However, we are not bound by the trial court's deductions or inferences from its factual findings. Id. Ultimately, the test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." Landis v. Landis, 869 A.2d 1003, 1011 (Pa.Super.2005) (citations omitted). We may reject the conclusions of the trial court "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." Hanson v. Hanson, 878 A.2d 127, 129 (Pa.Super.2005).
With any child custody case, the paramount concern is the best interests of the child. Landis, supra, 869 A.2d at 1011. This standard requires a case-by-case assessment of all the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. Id. (citations omitted).
Id. at 471.
¶ 11 We articulated our standard of review over the exercise of jurisdiction in Lucas v. Lucas, 882 A.2d 523 (Pa.Super.2005), where we stated:
A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.
Id. at 527 (quoting McCoy v. Thresh, 862 A.2d 109, 112 (Pa.Super.2004)).
¶ 12 In Billhime v. Billhime, 952 A.2d 1174 (Pa.Super.2008), we considered a motion to transfer jurisdiction where the original custody agreement was entered in Pennsylvania. We analyzed the case pursuant to Section 5422 of the UCCJEA, which sets forth the following test to determine whether a trial court retains "exclusive, continuing jurisdiction" over its initial child custody order:
(a) General rule.Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:
(1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or
(2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.
23 Pa.C.S. § 5422(a).
¶ 13 After the original custody order was entered in Billhime, the mother moved to Florida with the children pursuant to an order filed by the trial court that had issued the original custody order. Id. at 1175. After several years, the father filed a petition for primary physical custody of the children. Id. The mother filed a motion in the trial court requesting that it relinquish jurisdiction to the trial court in *37 her county of residence in Florida. Id. The trial court declined on the basis that "there exists evidence that the children and one of the parents continues (sic) to have a significant connection with this Commonwealth." Id. at 1176 (citation omitted). This Court reversed and relinquished jurisdiction to the State of Florida, finding that the trial court had focused almost exclusively on the father's connections to the Commonwealth, ignoring the fact that the children visited only several times per year and that, "[i]n fact, essentially all of the evidence presented at the evidentiary hearing demonstrates that information relating to the children's welfare is now located in the state of Florida." Id. at 1177.
¶ 14 The trial court's findings reveal a similar fact-pattern in the instant case. Child does not reside in Pennsylvania and, by the time of the hearing, had not resided here for almost seven years, from the time she was six months old. Mother does not reside in Pennsylvania and, by the time of the hearing, had been absent from the Commonwealth almost as long as Child. It is undisputed that Father has had no contact with Child since Child left the Commonwealth and, in addition, Father does not challenge the following finding by the trial court: "I make a finding of fact that under the facts presented to me today, Michigan has jurisdiction because [Child] has resided there for more than six months. The center of interests including C]hild's physicians, pediatrician, school, friends, family, [and] contacts[,] are in Michigan." N.T., 6/4/09, at 53-54. We find no abuse of discretion in the trial court's ruling. See Lucas, supra.
¶ 15 In Father's second question, he claims that the trial court must hear his petition because paragraphs 5 and 7 of the custody agreement constitute a "forum selection clause." Father's Brief, at 9. We disagree. First, we observe that the only paragraph of the agreement that in any way speaks to venue in this Commonwealth, paragraph 7, is permissive in that it states if Father wished to petition to see Child, he "may do so in Philadelphia." We cannot interpret this wording as the expressed intention of the parties to designate this Commonwealth as the only forum for litigation.
¶ 16 More relevant to our discussion, however, is Section 5427 of the UCCJEA, which lists the factors a court must consider in determining whether the jurisdiction is an inconvenient forum. Section 5427 provides:
(a) General rule.A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.
(b) Factors.Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(2) the length of time the child has resided outside this Commonwealth;
(3) the distance between the court in this Commonwealth and the court in *38 the state that would assume jurisdiction;
(4) the relative financial circumstances of the parties;
(5) any agreement of the parties as to which state should assume jurisdiction;
(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(8) the familiarity of the court of each state with the facts and issues in the pending litigation.
23 Pa.C.S. § 5427.
¶ 17 Factor five, an agreement by the parties as to which state will assume jurisdiction, is merely one of eight factors enumerated in the UCCJEA. Even if the trial court had determined that the wording of the agreement was a forum-selection clause, it would be outweighed here by at least six of the eight factors. The first factor weighs in favor of the State of Michigan in that domestic violence is a factor in this case and all the evidence points to the fact that Mother's and Child's friends, family and social networks, i.e. all the things in which individuals find stability and security, are located in Michigan. The second factor clearly favors Michigan, as Child has had no contact with the Commonwealth for almost her entire life, while having spent the greater part of it in Michigan. The third factor also favors Michigan in that there is significant distance between the two courts, which would require substantial travel by Mother, Child and other witnesses. The only evidence in the record relating to factor four, the relative financial circumstance of the parties, is the provision in the March 14, 2002 agreement that Father would pay Mother's travel costs if she were required to appear in Philadelphia. Factor six clearly weighs in favor of Michigan, as the trial court found that virtually all of the center of Child's interests are located in Michigan. See N.T., 6/4/09, at 53-54. The seventh factor also favors Michigan because, once the file is transferred to the appropriate court in that State or Commonwealth, that court will possess the superior ability to decide the issue expeditiously, as well as the procedures necessary to present the evidence, because the record reveals that everything related to the case, aside from Father's presence, will then be in the State of Michigan. Finally, factor eight currently favors Pennsylvania; however, Michigan has a higher potential of possessing a greater familiarity with the facts and issues in the litigation, as it would be dealing with Mother and Child in the context of their lives within its jurisdiction. Our review of the UCCJEA's eight forum factors, in light of the facts as found by the trial court, convinces us that Pennsylvania is an inconvenient forum and that those factors favor Michigan as the convenient forum.
¶ 18 Finally, Father claims that the trial court "relied heavily, if not entirely, in its Opinion on pure irrelevant hearsay, namely, arguments presented by [Mother's] counsel in [Mother's] Brief and at oral argument as to [Father's] past misconduct." Father's Brief, at 11. At argument, Mother's counsel articulated the abuse purportedly detailed in the DHS record that led to the removal of Father's two other daughters from his home for two years. The trial court cited that abuse in its opinion and concluded, "This court believes the best interest demands that [Child] stay with her Mother, not the Father[,] until a trial on custody takes place. Father presents a potential danger to [Child]. The Court in Michigan should *39 determine when, where and if the Father should be allowed near her." Trial Ct. Op. at 8. The DHS file is not part of the record; however the Custody Probation Officer Home Investigation Report is part of the record before us and Father raised no objection to its admission into evidence. We find, based on the severity of DHS's response to its investigation of Father's alleged abuse of his older daughters, that the trial court did not abuse its discretion in factoring in reports of Father's alleged abuse of his other daughters, and therefore declining jurisdiction in favor of the courts of the State of Michigan, in part, on the basis of the best interests of Child.
¶ 19 We therefore conclude that the trial court conducted a thorough and proper assessment of the Section 5427(b) factors. Father's cited factors in favor of Pennsylvania as the proper forum do not outweigh the overwhelming factors favoring Michigan as the proper forum. The trial court properly considered this Court's decision in Billhime and factored in the appropriate attendant circumstances. Accordingly, we affirm the order of the trial court.
¶ 20 Order affirmed.
NOTES
[*] Former Justice specially assigned to the Superior Court.
[1] Father was convicted of criminal charges arising from the incident and was evicted from the residence he shared with Mother.
[2] Father filed his notice of appeal on June 30, 2009. The reproduced record contains a printed form titled STATEMENT OF ERRORS COMPLAINED OF ON APPEAL CHILDREN'S FAST TRACK APPEAL on which Father's counsel has hand-written the errors complained of. Although the docket does not indicate the filing of this statement, we will assume Father filed it with his notice of appeal, pursuant to Pa.R.A.P. 905(a)(2).