J-A23016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.C.-F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| V.M. | : | No. 270 WDA 2018 |

Appeal from the Order Entered January 23, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  Case No. FD05-007279-005

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 21, 2018**

Appellant, M.C.-F. ("Mother"), and Appellee, V.M. ("Father"), are the parents of a minor child ("Child"), who was born in June of 2005.  In the instant appeal, Mother challenges the January 23, 2018 order that, *inter alia*, denied her petition to relocate with Child to Tennessee.  After review, we affirm.

The record reflects that the underlying matter is a high-conflict custody case.  The parties were married from July 7, 2004, through August 1, 2006.  Child was born in June of 2005.  Following their divorce, the parties shared legal custody of Child, with Mother having primary physical custody.  Mother subsequently remarried Q.F. ("Stepfather").  On December 27, 2017, Mother filed a notice of proposed relocation.  Mother requested to relocate with Child to Antioch, Tennessee, with Stepfather and Mother's two children born of her

marriage to Stepfather. In her petition, Mother sought to relocate Child and leave Pennsylvania on January 15, 2018. On January 12, 2018, Father filed a petition for special relief objecting to Mother's proposed relocation. Due to the immediacy of Mother's proposed move, the trial court ordered an expedited relocation hearing. The relocation hearing was held on January 19, 2018, and January 23, 2018. At the conclusion of the hearing, the trial court ordered as follows:

> 1. The parties having been advised that both relocation and custody are at issue, to expedite resolution of the dispute, the Court hereby deems Father's objection to the Proposed Relocation to be a timely filed Petition for Modification of Custody, for which fees and the Generations program are hereby waived, so long as Father files such a Petition formally requesting primary physical custody of the minor child M.C., age 12 (the "Child["]) with the Court within 10 days hereof.[1]
>
> 2. Mother's request to relocate with the Child is hereby DENIED.
>
> 3. Should Mother elect to remain in Allegheny County with the Child, Mother and Father shall share physical custody of the Child according to a week-on/week-off schedule commencing Sunday, January 28, 2018 at 4:00 p.m.
>
> 4. Should Mother elect to relocate to Tennessee without the Child, Father shall be granted primary physical custody of the [C]hild. Mother shall be granted partial physical custody of the child every summer from one (1) week after the child finishes school until one (1) week before the child returns to school. Mother shall also exercise partial physical custody for the entire winter break in even years, and from the day after Christmas until the day before school resumes in odd years.

---

[1] Father filed a formal petition for primary physical custody of Child on January 22, 2018.

5. Transportation will be shared, with the party receiving custody being responsible for said transportation, except that Mother shall bear all transportation costs for the purposes of interstate custody exchanges.

6. If either parent is to take vacation with the Child in a location outside of that parent's home County, they will notify the other parent as to the location of that vacation at the time the vacation schedule is finalized.

7. Parents shall continue to share legal custody of the Child. Parents shall consult each other on all major non-emergency issues relating to the Child.

8. Each parent shall share knowledge of any illness, accident or other circumstances affecting the health or welfare of the Child.

9. In the event of an emergency or serious injury to either the Child, or parent giving care, the other parent will be notified immediately if it will interrupt the custody schedule. Each parent's custody schedule may be interrupted if it is medically ill-advised to physically remove the Child due to serious injury or illness of the Child.

10. Parents will make every effort to discuss extracurricular lessons/activities prior to enrollment of the Child, especially if those activities will mandate both parents' participation during their custody period.

11. If the Child is participating in a school event, extracurricular activity or social event, each parent will keep the other parent informed to allow the other parent to attend and both parents will ensure that the Child is able to attend all reasonably scheduled activities.

12. Both parents shall treat each other with respect and shall endeavor to communicate directly rather than use the Child or a third party as an intermediary.

13. Each parent shall keep the other informed as to each of his or her address and telephone number, including during vacation periods when the parents are traveling with the Child.

14. Neither party shall move with the Child without having first obtained a written consent of the other party or an Order of Court.

15. The Child may have reasonable, regular, daily telephone contact with the parent who is not exercising physical custody.

16. If both parents can agree to a change in this Order, the parents may change the times and dates of the custody schedule as set forth herein without formal modification of this Order. If both parents cannot agree, the Order shall be followed as written or either parent may request appropriate relief from the Court.

17. This Order is made a final order of this court. This constitutes a final order or final decree. If applicable, this order or decree shall be entered as a judgment by the Office of Court Records. Rule 236 Notice to be sent by the Office of Court Records.

Order, 1/23/18, at 1-2. Mother filed a motion for reconsideration that the trial court denied. Order, 2/20/18. Mother filed a timely notice of appeal and concise statement of errors complained of on appeal on February 22, 2018. The trial court filed its opinion on June 5, 2018.

On appeal, Mother raises the following issues for this Court's consideration:

I. Did the trial court err as a matter of law and commit an abuse of discretion under the Due Process Clause and Rule 1915.17(b) when it allowed [Father] to proceed with his claim objecting to [Mother's] Relocation despite the absence of a Counter-Affidavit timely filed on his behalf?

II. Did the trial court err as a matter of law and commit an abuse of discretion under the Due Process Clause and Rule 1915.15(b-c) when it proceeded with [Father's] claim for Primary Physical Custody of [Child] without Father filing a Complaint for Primary Physical Custody nor a Petition for Modification of a Custody Order prior to the Hearing on [Mother's] Relocation?

III. Did the trial court err as a matter of law and commit an abuse of discretion in its application of the 23 Pa. C.S.A. §5337 relocation

factors when it awarded [Father] Primary Physical Custody despite evidence proving [Mother's] Relocation would greatly enhance the quality of life for [Child] and Mother and would continue to allow [Father] and [Child] the opportunity for a meaningful relationship?

IV. Did the trial court err as a matter of law and commit an abuse of discretion in its application of the 23 Pa. C.S.A. §5328 custody factors when it awarded [Father] Primary Physical Custody despite evidence rebutting [Father's] ability to co-parent with [Mother] and encourage and permit frequent and continuing contact between [Mother] and [Child]?

Mother's Brief at 2-3.

Our scope and standard of review are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) (internal citations omitted).

Mother's first two arguments are based on an overly narrow reading of Pa.R.C.P. 1915.15, Pa.R.C.P. 1915.17, and 23 Pa.C.S. § 5337, without regard

to Pa.R.C.P. 126.[2]  Moreover, Mother's first two issues seemingly ignore the fact that Mother filed her notice of proposed relocation less than three weeks prior to her planned move to Tennessee.  Additionally, we discern no abuse of discretion in the trial court denying Mother's petition to relocate and granting Father's petition for modification of custody pursuant to the terms stated in the January 23, 2018 order.  After a careful review of the parties' arguments, the certified record, and applicable legal authority, we are satisfied that the trial court's opinion aptly discusses and properly disposes of Mother's issues raised on appeal.  Accordingly, we affirm the January 23, 2018 order on the basis of the trial court's opinion, which was filed on June 5, 2018.  The parties are directed to attach copies of that opinion in the event of future proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/21/2018

---

[2] Pa.R.C.P. 126 provides as follows:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

M.C.-F.,

      Appellant,

  v.

V.M.,

      Appellee.

)
)
)
)
)
)
)
)
)
)

FAMILY DIVISION

270 WDA 2018
FD-05-007279-005

OPINION
JUDGE HUGH F. McGOUGH

Copies by first class mail to:

Plaintiff's Counsel:
Elizabeth A. Beroes, Esq.
Beroes Law Center
4054 Penn Avenue
Pittsburgh, PA 15224
(412) 621-6811

Defendant's Counsel:
James Bogatay, Esq.
Bogatay Family Law LLC
429 Fourth Ave., Ste. 1702
Pittsburgh, PA 15219
(412) 345-1595

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| M.C.-F., | ) | FAMILY DIVISION |
| Appellant, | ) | 270 WDA 2018 |
| | ) | FD-05-007279-005 |
| v. | ) | |
| | ) | |
| V.M., | ) | JUDGE HUGH F. McGOUGH |
| Appellee. | ) | |

## OPINION

H. F. McGough, J.                                                                    June 1, 2018

On January 23, 2018, after a two-day hearing on Appellant's Proposed Relocation with the minor child from Pennsylvania to Tennessee, this Court denied Appellant's Proposed Relocation with the minor child, finding that Appellant had failed to persuade the Court that the Proposed Relocation was in the best interests of the minor child. Appellant has appealed that denial. Each of the matters set forth in Appellant's Concise Statement of Matters Complained of on Appeal is addressed below in the order in which it was presented therein.

### Discussion

1.      Counter-Affidavit: Appellant first challenges the absence of a formal Counter-Affidavit from Appellee. At the time of the filing of Appellant's Notice of Proposed Relocation, both parties were unrepresented by counsel. Within 30 days of receipt of Appellant's Notice, Appellee promptly came to Motions Court with a Petition for Special Relief, which detailed his objections to the proposed relocation. Thus, Appellant was on actual, timely notice of Appellee's objection to the Proposed Relocation, and given the imminence of the proposed move at that time, the Court felt that strict adherence to procedural formalisms would have unnecessarily delayed the

- 1 -

Court's review of the matter. Accordingly, the Court scheduled an expedited Relocation Hearing on the matter without requiring the filing of an additional Affidavit from Appellee, and does not believe that it was reversible error to have done so under these circumstances, given the actual notice to Appellant and the discretion accorded the Court pursuant to Pa.R.C.P. 126.

2.      Complaint for Custody: Appellant next claims that the Court erred by addressing Appellee's complaint for Primary Physical Custody during the Relocation Hearing. At the outset of the Hearing, the Court recognized the need for Appellee to have filed a complaint for custody (so that Appellee's custody could be modified in case Appellant's Proposed Relocation was not approved), and the Court's Order dated January 23, 2018 accordingly granted Appellee leave to file such a complaint; this turns out to have been unnecessary, as Appellee had, in fact, already filed a complaint for custody, along with the required Criminal Record/Abuse History Verification form, on January 22, 2018. Both parties had been apprised by the Court prior to the Hearing that both custody and relocation were at issue, and both parties had been given copies of the Relocation and Custody Factors. Indeed, at the conclusion of the first day of the Hearing, Appellant expressed distress that she had not yet been given a chance to address the custody factors, and was reassured that she would be given ample opportunity to do so when the Hearing continued.[1] Both parties were aware of – and were given ample opportunity to address – the relocation and custody factors pertinent to the Proposed Relocation, and it was not reversible error to address Appellee's complaint for custody that was occasioned thereby.

---

[1] *See* Transcript of Day 1 at 163: "[APPELLANT]: Your Honor, your court order said, if I can read from it, an expedited relocation hearing on mother's relocation proposal filed 12/27 of father's objection hereto will take place for three hours. Parties apprised of relocation and custody factors at issue. So I was under the impression that the relocation and custody factors at issue were what we were analyzing today."

3. <u>Relocation Factors</u>: Particularly significant to the Court was the fact that before the first day of the Relocation Hearing, Appellant had already packed up her home in Allegheny County and prepared to put it on the market, and all members of Appellant's household, with the exception of herself and the minor child, had already relocated to Tennessee, where a one-year lease had been signed on a house.[2] Appellant's new spouse was not present at the Hearing to testify to the details of his job search (including, most importantly, whether or not he had ever explored any job options that would have enabled him to remain in Allegheny County). Appellant provided no comparative educational information (other than the name of the new school the minor child would attend), no data comparing quality of life in the locations at issue, no evidence about how the modest increase in Appellant's spouse's salary[3] would improve the child's quality of life, and no practical suggestions on how to preserve the quality of the relationship between the minor child and Appellee. Unrebutted testimony indicated that the minor child *might* have favored the relocation, *if* he would be getting his own bedroom... which appeared to be rather unlikely, given that the family was moving into a house in Tennessee with the same number of bedrooms and occupants as their house in Allegheny County.[4] Accordingly, the Court's application of the Relocation Factors reflected the Court's assessment that Appellant had failed to satisfy her burden of demonstrating that the Proposed Relocation was in the best interests of the child.

---

[2] *See* Transcript of Day 1 at 68.

[3] Appellant acknowledged that her husband expected to receive a $500/month salary increase as a result of his relocation. *See* Transcript of Day 2 at 66.

[4] *See* Appellant's explanations in Transcript of Day 1 at 58 and 60-61: "Initially [minor child] indicated that he was going with the flow and was okay with moving as long as he had his own room. After discussing the matter with the non-relocating party, he indicated that he didn't want to move, but failed to give a reason why.,... Currently, [minor child] shares a room with his younger brother.... We have not figured out logistics on how it will work, but we are trying to insure that the child has his own room, as he's requesting."

4.	<u>Co-Parenting and Continuing Contact</u>: Appellant clearly viewed the Relocation Hearing as a mere formality, given that the move to Tennessee was practically a *fait accompli* prior to the Hearing date. Appellant's assessment of what would or would not be in the child's best interests did not seem to include Appellee in any way; indeed, Appellant appeared to believe that the only two options available to the Court were permitting the Proposed Relocation or rendering the child and his family homeless.[5] Appellant admitted that she had formulated no "Plan B" in the event that permission to relocate with the child was denied.[6] It seems particularly odd, therefore, for Appellant to challenge Appellee's co-parenting and willingness to encourage continuing contact, when it was Appellant's proposed move to Tennessee that precipitated the instant proceedings. The mere existence of communications and parenting challenges between the

---

[5] See Transcript of Day 1 at 69-70:
[APPELLANT]: You're welcome. A relocation will not only enhance the general quality of life for the party seeking relocation, but also the child.
THE COURT: Why?
[APPELLANT]: I'm sorry?
THE COURT: How will it enhance?
[APPELLANT]: Well, otherwise, we would be homeless because the property is in Nashville that we would be moving to. And without either of us working, we wouldn't be able to meet our fiscal responsibilities here in Pittsburgh.
THE COURT: I understand that for you. But the point is you have to show that it's going to enhance the child's quality of life.
[APPELLANT]: Right. It also enhances the child's quality of life. The child is part of the family unit. So, whenever we are impacted, the child is also impacted by the circumstances impacting the family as a whole.
[6] *See* Transcript of Day 1 at 56-57:
THE COURT: And what's your plan if relocation is denied? Will you move with the other two children to join your husband in Nashville or not?
[APPELLANT]: Well, we don't have a way to live here because --
THE COURT: So the answer is, if relocation is denied, if I don't allow the child to go to Nashville, you will move without the child?
[APPELLANT]: I don't know. I hadn't considered the possibility of otherwise since the relocation is in the best interest of the child.
THE COURT: That's the ultimate question that we're deciding here today. I understand your position.
[APPELLANT]: Sure.
THE COURT: I'm the one who has to decide that.

- 4 -

litigants should not, as Appellant appears to suggest, completely thwart an otherwise appropriate award of custody when, as here, there has been a material change in the *status quo*.

In conclusion, the Court discerns nothing in the record indicating that it failed to properly consider and weigh each of the applicable factors, and accordingly relies upon the Transcripts to document the reasoning behind the Court's findings, conclusions, and Order set forth in pages 89-128 of the Transcript of Day 2.

For all of the foregoing reasons, the Order dated January 23, 2018 should be Affirmed.

BY THE COURT:

_____, J.

Honorable Hugh Fitzpatrick McGough
Court of Common Pleas

Honorable Hugh Fitzpatrick McGough
Court of Common Pleas
Room 5069, Family Law Center
440 Ross Street
Pittsburgh, PA 15219

- 5 -