J-S47039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| T.G.G., | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| C.G.G. | : | No. 660 MDA 2019 | |

Appeal from the Order Entered April 11, 2019
in the Court of Common Pleas of York County
Civil Division at No(s):  2011-FC-1706-03

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 17, 2020**

T.G.G. ("Father"), *pro se*, appeals from the Order dated April 2, 2019, and entered April 11, 2019,[1] pursuant to Father's Complaints for Custody pertaining to his two daughters with C.G.G. ("Mother"):  K.G., born in September 2003, and M.G., born in July 2005 (collectively, the "Children"). The April 2019 Order made final an October 25, 2018, Interim Order, and awarded Mother sole legal and sole physical custody of the Children.  We affirm.

---

[1] The subject Order was dated April 2, 2019.  However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until April 11, 2019.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999).

Mother initially was awarded primary physical custody of the Children after protection from abuse proceedings.  N.T., 4/2/19, at 32.  Father filed Complaints for Custody on August 29, 2017, and August 9, 2018.  Father, who was incarcerated, sought to contact the Children through telephone calls and letters.  ***See*** Order Scheduling Custody Trial, 1/11/19, at 1; ***see also*** Interim Order for Custody, Pending Trial, 10/26/19, at 1-2.  An October 26, 2018, Interim Order permitted Father to send letters to the Children in the care of the maternal grandfather.  ***See*** Interim Order for Custody, Pending Trial, 10/26/19, at 4.  Pursuant to an Order entered on January 11, 2019, after a pre-trial custody conference,[2] sole legal and physical custody were confirmed in Mother.  However, Father was permitted to send letters directly to the Children via a post office box in Florida.  ***See*** Order Scheduling Custody Trial, 1/11/19, at 5.

The trial court conducted a hearing on April 2, 2019.[3]  Father, who was incarcerated at SCI Greene,[4] was not present and did not participate.  Mother,

---

[2] Father participated in the pre-trial conciliation conference on October 25, 2018, via telephone.  He did not participate in the January 10, 2019 pre-trial custody conference.

[3] A continuance request, filed by Father on April 1, 2019, was denied by the trial court on April 2, 2019.  Father additionally filed a prior Motion for extension of time for the hearing, as well as Motions for the appointment of counsel, all of which were denied.

[4] Father's next parole hearing was scheduled for May 2019.  N.T., 4/2/19, at 35.  It is unknown if he remains incarcerated, or was released.

who resides in Florida, was represented by counsel and testified via telephone.[5] The Children, who were fifteen and thirteen years old at the time of the hearing, and reside with Mother in Florida, also testified via telephone.

On April 11, 2019, the trial court entered an Order rendering the trial court's Interim Order of October 25, 2018, a final Order, and awarding Mother sole legal and sole physical custody of the Children.[6]  Order, 4/11/19, at 2. The court directed that "Father is to have no contact with the [C]hildren, other than sending letters to them directly to [M]other's post office box in Florida…." *Id.* The court further directed that, otherwise, Father was to have no contact with Mother or the Children. *Id.* Notably, the court found Father "to be a severe risk of harm to these [C]hildren." *Id.* at 3. As such, it opined, "it is probably in the best interest of [Children] that [F]ather not have any contact with them, at least as long as they remain minors[,] until they reach the majority age." *Id.* at 3. The court then proceeded to analyze each of the sixteen custody factors enumerated in 23 Pa.C.S.A. § 5328(a). *Id.* at 3-11.

On April 24, 2019, Father filed a timely, *pro se*, Notice of Appeal. Father failed to file a concurrent concise statement of errors complained of on appeal,

---

[5] At the outset of the hearing, counsel for Mother moved to have Father's Petition dismissed based upon Father's failure to make arrangements to appear at the hearing. The trial court denied the Motion. *Id.* at 3.

[6] This Order memorialized what the court had placed on the record at the conclusion of the hearing. N.T., 4/2/19, at 50-60.

pursuant to Pa.R.A.P. 1925(a)(2)(i).    Rather, Father filed his Concise

Statement on May 14, 2019.[7]  Thereafter, the trial court issued a Statement

of Lower Court Pursuant to Pa.R.A.P. 1925(a)(2)(ii), filed on May 7, 2019, in

which the court referred to the record for the basis of its Order.  The trial court

then issued an Amended Statement of Lower Court Pursuant to Pa.R.A.P.

1925(a)(2)(ii) on May 20, 2019, addressing Father's first issue raised on

appeal.

Father raises the following issues for our review:

1. Did the [trial] court abuse [its] discretion by retaining jurisdiction to decide custody/visitation over the instant case[,] rather than relinquishing jurisdiction to the Children's home state?

2. Did the [trial] court abuse [its] discretion by violating [Father's] Fourteenth Amendment right[s] to due process and equal protections under the law[,] as guaranteed by the United States Constitution, by not permitting him to be present at the last two hearings in the above[-]captioned matter, either in person, by phone, or by video conference?

3. Did the [trial] court abuse [its] discretion by demonstrating [its] obvious bias [against Father], and [its] favor toward [Mother]?

4. Did the [trial] court abuse [its] discretion by overriding or misapplying the law, [and] was the judgment exercised manifestly

_____

[7] While Father violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with his Notice of Appeal, as Father filed a Rule 1925(b) Concise Statement less than one month later, and there is no assertion of any prejudice, we do not quash or dismiss his appeal.  *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (stating that the failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is constitutes a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing).

unreasonable, and the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record?

Father's Brief at 5 (some capitalization omitted, issues reordered for ease of disposition).

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

As this Court has explained,

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5328(a) sets forth the best-interest factors that the trial court must consider in determining custody:

## § 5328. Factors to consider when awarding custody

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

> "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. *Id.*
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 ([Pa.] 2013)….
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v.*

- 8 -

> *M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 ([Pa.] 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014).

Turning to the issues raised in Father's appeal, Father first challenges the trial court's jurisdiction. "[A]s a pure question of law, the standard of review in determining whether a [trial] court has subject matter jurisdiction is *de novo*[,] and the scope of review is plenary."[8] *S.K.C.* 94 A.3d at 406 (citation omitted). Section 5421 states as follows regarding initial child custody jurisdiction:

> **(a) General rule.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
>
> **(1)** this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;
>
> **(2)** a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

---

[8] "From our review of the statutory language, it is evident that a section 5422 determination does not involve a trial court's decision regarding whether to exercise jurisdiction that has been established. Rather, a section 5422 determination implicates the subject matter jurisdiction of the trial court." *S.K.C. v. J.L.C.*, 94 A.3d 402, 408 (Pa. Super. 2014)

**(i)** the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

**(ii)** substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

**(3)** all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

**(4)** no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

**(b) Exclusive jurisdictional basis.--**Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

**(c) Physical presence and personal jurisdiction unnecessary.--**Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

23 Pa.C.S.A. § 5421.

Further, Section 5422 provides for exclusive, continuing jurisdiction as

follows:

**(a) General rule.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

**(1)** a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person

acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

**(2)** a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

**(b) Modification where court does not have exclusive, continuing jurisdiction.**—A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

23 Pa.C.S.A. § 5422. Section 5402 defines "child custody proceeding" and

"home state" as follows:

**"Child custody proceeding."** A proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation or enforcement under Subchapter C (relating to enforcement).

. . .

**"Home state."** The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S.A. § 5402.

Father argues that Florida was the Children's home state[,] and that the trial court did not have jurisdiction to hear and rule on the matter. Father's Brief at 10-11. Father asserts that "[t]he lower court should have relinquished jurisdiction, and informed all parties that the instant case must be heard in Florida because Florida is the [C]hildren['s] home state." *Id.* at 11.

The trial court determined that Pennsylvania was no longer the Children's home state. N.T., 4/2/19, at 52. However, in concluding that it maintained jurisdiction, the trial court reasoned as follows:

> The [c]ourt maintains "exclusive, continuing jurisdiction" of this child custody [O]rder[] because the Children and both parents have a significant connection with this Commonwealth and substantial evidence is available in this Commonwealth concerning the Children's care and protection. The parties in this child custody action have a lengthy history not only in the [F]amily [D]ivision of this [c]ourt, but the [C]riminal [D]ivision of this [c]ourt as well. There ha[ve] been numerous Protection [F]rom Abuse actions, In[d]irect Criminal Contempt convictions, and other criminal convictions against Father in the Commonwealth in which Mother is the repeated victim of Father's terror. As the record indicates, Mother and the Children resided in [the] Commonwealth prior to moving to Florida; and Father continues to reside in Pennsylvania and currently is incarcerated in Pennsylvania. Evidence of Father's past and present conduct[,] which was considered in the determination of the final custody order in this matter[,] is mostly present in the Commonwealth. For example, as Mother testified to at the Custody Trial on or about April 11, 2019, Father continues to violate the current Protection [F]rom Abuse Order[,] while incarcerated in the Commonwealth[,] by sending correspondences directly to her, rather than directly to the Children.
>
> Therefore, the [c]ourt did not abuse its discretion in finding that the Commonwealth continues to maintain jurisdiction under 23 Pa.C.S.A. 5422(a), because the Children and both parents have a significant connection with this Commonwealth and substantial

evidence is available in this Commonwealth concerning the Children's care and protection.

Alternatively, the [c]ourt would argue that Father is attempting to engage in forum shopping. The Custody Trial held on or about April 11, 2019 was the result of a [C]ustody [C]omplaint filed by Father with the York County Court of Common Pleas on or about August 9, 2018. At that time, Mother and the Children had resided in Florida for several years. Father consented to the jurisdiction of the Commonwealth when he filed his initial pleading, but now wants to object to proper jurisdiction because he did not get the result that he desired. Further[,] this [c]ourt finds Father's objection to be nonsensical. As a resident of the Commonwealth, it is more burdensome for Father to litigate this matter in Florida. Thus, the [c]ourt can only conclude that Father raises this issue with the intent of attempting to forum shop and hope that another jurisdiction will be more favorable to him.

Amended Statement of Lower Court Pursuant to Pa.R.A.P. 1925(a)(2)(ii), 5/20/19, at 3-4.[9] Upon review, we discern no error or abuse of discretion. The record supports the trial court's determination that Pennsylvania had

_____

[9] On the issue of jurisdiction, we observe that the trial court stated as follows at the conclusion of the hearing:

Finally, we order that upon any application for a custody case to be opened in a proper venue in Florida, that, upon that happening, this case is to be transferred to the appropriate venue in Florida. We specifically find that Pennsylvania is no longer the home state. Once an action is filed in Florida—since neither the [C]hildren [n]or [] [M]other have resided in the Commonwealth of Pennsylvania for approximately five-and-a-half years. We note that Father is incarcerated in Pennsylvania, but just about as far away from York County as possible, and, therefore, Florida is the better state for this matter to be heard in the future.

N.T., 4/2/19, at 52.

initial child custody jurisdiction as the Children's home state, and maintained exclusive, continuing jurisdiction. Consequently, Father is not entitled to relief on this claim.

In his second claim, Father argues that the trial court abused its discretion by violating his Fourteenth Amendment rights to due process and equal protection, by failing to allow him to be present and participate in the hearing in this matter.[10] Father's Brief at 18-22. Father contends that he made a good faith effort to attend the hearing and participate. *Id.* at 18. According to Father, he notified the trial court of his desire to participate, and provided a copy of the Department of Corrections policy governing video conference procedures and contact information for the correctional facility coordinator. *Id.* Father indicates that, while he received a response that it was his responsibility to contact the coordinator, which he suggests is an "impossible burden," the policy is that the facility must receive notification from the court. *Id.* at 18-19.[11, 12]

---

[10] Father directs our attention to the relevant April 2, 2019 hearing, as well as a prior, January 10, 2019, pre-trial custody conference. Father's Brief at 18-22.

[11] While Father attached evidence as an appendix to his brief, this Court does not consider that which is not part of the certified record. *See* ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (noting that an appellate court may only consider that which is in the certified record).

[12] Interestingly, Father participated in previous proceedings.

Moreover, Father contends that an *ex parte* proceeding was held where he was unable to respond, cross-examine, call, or question witnesses, introduce evidence, or make objections. *Id.* at 19-20. According to Father, he "was given no meaningful opportunity to advocate for himself during the hearing and subsequent trial." *Id.* at 19-20. Father posits that "there can be no doubt[] that [Father] was denied his [c]onstitutionally protected/guaranteed right to due process by being prevented from participating in the trial and prior hearing, and [Father] submits that the lower court abused it's discretion by preventing [Father] from participating in those proceedings." *Id.* at 22.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018) (emphasis in original) (citations omitted).

Infringement on parental rights implicates a natural parent's Fourteenth Amendment right to due process. *See In the Interest of A.P.*, 692 A.2d 240, 242 (Pa. Super. 1997) (recognizing that natural parents have a "fundamental liberty interest … in the care, custody, and management of their children") (citation omitted). "[T]he right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution." *In re S.H.*, 71 A.3d at 979-80 (citing *Hiller v. Fausey,* 904 A.2d 875, 885

(Pa. 2006)). "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." **In re J.N.F.**, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." **In re Adoption of Dale A., II**, 683 A.2d 297, 300 (Pa. Super. 1996). Similarly, equal protection requires that "like persons in like circumstances will be treated similarly." **In re Adoption of C.J.P.**, 114 A.3d 1046, 1057 (Pa. Super. 2015).

Instantly, Father does not dispute that he was provided with notice of the hearing, and advised by the trial court, in writing, that it was his responsibility to notify the hearing coordinator at his correctional facility of the court's Order. Despite Father's pronouncements that he undertook great efforts in an attempt to participate, there is nothing of record indicating that Father provided the hearing coordinator with the relevant scheduling Orders. The certified record merely reveals a Motion for an extension and a Motion for a continuance prior to the April 2, 2019 hearing.[13] Furthermore, the Motion

---

[13] The Motion for extension was denied on March 7, 2019, with an indication that it was an improper filing. Order, 3/7/19. The Motion for continuance was denied by the trial court on April 2, 2019. Order, 4/2/19.

for continuance was filed on April 1, 2019, one day prior to the hearing. As such, Father's second claim fails.[14]

We consider Father's third and fourth claims together, as they are related. Father argues that the trial court abused its discretion in exhibiting prejudice and bias against him and in favor of Mother. Father's Brief at 13-17. Father asserts that the court engaged in a personal attack against him by making numerous references to domestic violence, and finding that he was a severe risk of harm to the Children in its order. *Id.* at 14. Father maintains that he was never any risk of harm to the Children and neither Mother nor the Children ever made such allegations. *Id.* Further, Father contends that the trial court's references to domestic violence and Father's mental state are based solely on *ex parte* testimony. *Id.* at 14-16. In addition, Father suggests Mother used the criminal courts as a means of parental alienation. *Id.* at 17. In support, Father argues that,

> [i]n the instant case, … the [trial] court abused [its] discretion by demonstrating bias or prejudice when it stereotyped [Father] as a domestic abuser, which is contrary to evidence of record. The [trial] court further abused [its] discretion by making irrelevant references to personal characteristics of [Father's] mental health, [*i.e.*] "Jekyll and Hyde personality," and demonstrating [its] blatantly obvious bias for [Mother].

*Id.*

---

[14] We additionally note that, while Mother moved for dismissal based upon Father's failure to appear for the hearing, the trial court denied Mother's request. N.T., 4/2/19, at 3.

- 17 -

A trial court is required to consider *all* of the Section 5328(a) factors in entering a custody order. ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the weight a court gives any one factor is almost entirely discretionary. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013). Critically,

> [i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order … our role does not include making independent factual determinations. … In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.")….

***Id.*** Further, although the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors. ***Id.***

Our review of the record discloses that the trial court reasonably analyzed and addressed each factor under Section 5328(a). ***See*** Order, 4/11/19, at 3-11. After finding factors 11, 14, 15, and 16 irrelevant, the trial court found that all of the other factors favored Mother. ***Id.*** As revealed, of importance to the court throughout its discussion of the factors was the domestic violence and abuse history related to this family, which is supported in the record. ***Id.*** The trial court expressly stated, "We do again reiterate what we said in the order itself, and that is that we do find [F]ather to be a

severe risk of harm to the [C]hildren, past, present, and probably into the near future." *Id.* at 12. Notably, the court's analysis is devoid of any suggestion of bias or prejudice.

Finally, our review discloses that the trial court's findings and determinations are supported by the record. Mother testified that she and Father were married on August 22, 1997, and divorced in December 2017. N.T., 4/2/19, at 30. Mother revealed that Father was mentally, physically, and verbally abusive during their marriage. *Id.* As a result, Mother secured multiple protection from abuse Orders. *Id.* at 31. The last time Mother sought a protection from abuse order was on September 23, 2011. She recounted that Father "threatened to shoot me in front of my children and basically told them he was going to kill me and show them—and then kill himself to show them what mommy did to daddy." *Id.* at 32. Mother received a final protection from abuse Order for a period of three years. This final protection from abuse Order additionally granted Mother primary physical custody of the Children. *Id.*

Mother admitted that, despite the protection from abuse Order, she initially allowed Father to see the Children. *Id.* at 33. However, as it would always wind up in an argument, she began enforcing the Order. *Id.* at 33. Father then ceased attempting to have contact with the Children and focused on Mother. *Id.* As Mother explained, "[h]e would write gazillions and

gazillions of letters and things like that to me and not even try to contact the girls, and so, eventually, he started getting violated for it…." *Id.* at 34.

As recalled by Mother, Father violated the protection from abuse Order multiple times and was found guilty of violation. *Id.* at 33. Specifically, Father was charged with violation of the protection from abuse Order as well as with stalking crimes.[15] *Id.* at 34. Within hours of his initial release from prison, Father violated the terms of his parole by contacting Mother and then absconding for twenty-two days. *Id.* at 34. Further, Mother testified that, most recently, Father was in violation by sending her a letter in January 2019. *Id.* at 35.

Mother and the Children moved to Florida five-and-a-half years ago. *Id.* at 35-36. The Children are happy and doing well both academically and socially. *Id.* at 16-17, 19-20, 22, 25, 41-42.

The Children testified to last seeing Father the day he was arrested in May 2012. *Id.* at 9, 21. Neither could remember the last time they spoke with Father via telephone, but reported that they had recently received letters from him. *Id.* at 11, 22. M.G. indicated that Father began sending letters in October 2018, but that she did not read these letters because she did not feel

---

[15] The Criminal Record/Abuse History filed by Father on both August 9, 2018, and August 29, 2017, indicates multiple convictions, pleas, and/or charges for crimes related to stalking, 18 Pa.C.S.A § 2709.1, as well as contempt for violation of a protection order, 23 Pa.C.S.A. § 6114. *See* Criminal Record/Abuse History 8/9/18; *see* Criminal Record/Abuse History, 8/29/17.

comfortable doing so, as she is afraid of Father. *Id.* at 22-23. K.G. received a letter in December, which she read and described as "manipulative." *Id.* at 11-12. Both expressed a desire to have no contact with Father. *Id.* at 15-16, 24. As K.G. explained,

> I'm not really interested in him being in my life, because, for the past several years, I've been very fine with him not being in my life, and I'm about to finish the last years of my childhood and then I'm going to move on with my life, so it's like why should I want to, like be in contact with him when I'm about to go on my own and hopefully not have him be in my life at all at that point.

*Id.* at 15. Similarly, M.G. articulated that she does not think she will ever be comfortable enough for Father to be back in her life. *Id.* at 24.

Thus, the trial court's findings and determinations regarding the custody factors set forth at Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As such, we cannot grant Father relief on his third and fourth claims.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2020

- 21 -