J-S08014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| L.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.K. | : | |
| | : | |
| Appellant | : | No. 1462 WDA 2019 |

Appeal from the Order Entered August 29, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  No. FD-13-000236-008

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                     **FILED MARCH 27, 2020**

D.K. ("Father") appeals from the order entered on August 29, 2019.  The subject order granted L.W. ("Mother") permission to relocate from Pittsburgh to North Carolina with the parties' four-year-old son, L.K. ("Child"), and modified the parties' child custody arrangement to accommodate the relocation.  We affirm.

As the trial court explained:

> The parties were never married.  They were involved in an on-again off-again relationship beginning in 2010 and were living together when Child was born, separating not long after.  Their relationship was tumultuous and their first custody order evolved out of the settlement of a protection from abuse through a non-PFA consent agreement.
>
> Mother has always had primary [physical] custody of Child, with Father having approximately 100 overnights per year.  Father, however, also exercised custody most weekdays while Mother was working as the parties agreed this was preferable to Child being in daycare.

Mother worked as a dental hygienist and Father is a self-employed personal trainer with flexible hours. Mother has an [11-year-old] daughter from a former relationship; Father has no other children. Both parties have extended family in the Pittsburgh area. . . .

Approximately a year ago, Mother met [S.B.] at a wedding and the two began a relationship. [S.B.] lives in North Carolina where he is a state trooper. The two became engaged to be married and Mother is expecting his child. . . .

[On February 6, 2019,] Mother filed a notice of proposed relocation[, where she requested permission to relocate with Child from Pittsburgh to North Carolina. Father opposed the relocation]. An expedited [two-hour] hearing was held on Mother's petition on June 4, 2019 and [the trial court] permitted [Mother] to relocate by [order] dated June 19, 2019. Mother then moved to North Carolina with Child. Father filed a complaint for custody as well as a motion for reconsideration and a full trial was scheduled. After a [one-and-a-half] day trial and consideration of a post-trial memorandum of law submitted by Father, [the trial court] entered [an order on August 29, 2019,] again granting Mother's request to relocate and setting forth a comprehensive custody schedule for the parties.

Trial Court Opinion, 11/6/19, at 2-3 (footnotes and some capitalization omitted).

Father filed a timely notice of appeal. He numbers 17 issues in his statement of questions involved:

1. Did the trial court commit an abuse of discretion and/or error of law by failing to give proper weight and consideration to [Father's] role in [Child's] life in determining that this factor favors [Mother]?

2. Did the trial court abuse its discretion and/or make an error of law by failing to take into account the contacts [Child] has with his current status, more specifically, the relationships

with all of his extended family in his current area, as opposed to no extended family, except for a sibling, in the proposed relocation state?

3. Did the trial court commit an abuse of discretion and/or error of law by concluding that [Mother's] proposal provides to [Father], feasible opportunity to preserve the relationship between [Father and Child]?

4. Did the trial court abuse its discretion and/or make an error of law by concluding [Father] has attempted to turn [Child] against [Mother's] fiancé that he is regularly and significantly late for exchanges?

5. Did the trial court abuse its discretion and/or make an error of law in determining that [Child's] life would be enhanced by allowing the relocation?

6. Did the trial court abuse its discretion and/or make an error of law by concluding that [Father] has been aggressive in the past?

7. Did the trial court abuse its discretion and/or make an error of law concluding under Factor 4 that [Child] is resilient and very capable of adjusting and that will create stability and continuity in [Child's] life?

8. Did the trial court abuse its discretion and/or make an error of law by concluding under Factor 5 that [Mother], though she has no family in North Carolina, she may be a stay at home mom and be with her children?

9. Did the trial court abuse its discretion and/or make an error of law by concluding under Factor 8 that [Father] has discouraged [Child] from having a relationship with Mother's fiancé?

10. Did the trial court abuse its discretion and/or make an error of law by determining under Factors 9 and 10 that [Father] needs to improve his relationship and behavior toward [Mother] when he is frustrated and not taking into account [Mother's] behavior toward [Father] in providing that these factors favor [Mother]?

11. Did the trial court abuse its discretion and/or make an error of law in determining that the proximity of the parties, under Factor 11, in considering [Mother's] move to North Carolina that the parties will be very far away, without placing emphasis that this would favor a non relocation?

12. Did the trial court abuse its discretion and/or make an error of law under Factor 13, determining that [Father] has initiated much of the conflict between the parties?

13. Did the trial court abuse its discretion and/or make an error of law by failing to take into account that Mother had indicated in her relocation petition that she was seeking employment, however, has changed that position, in that, she had substantial employment in this area?

14. Did the trial court abuse its discretion and/or make an error of law by failing to take into consideration that Mother has had significant relationships over the past several years and had only a one-year relationship with her current fiancé, that she would see on a biweekly basis?

15. Did the trial court abuse its discretion and/or make an error of law by failing to take into account the upcoming educational needs of [Child]?

16. Did the trial court abuse its discretion and/or make an error of law in allowing the relocation prior to the marriage of the parties and significant ownership of property in the North Carolina area?

17. Did the trial court abuse its discretion and/or make an error of law by failing to impartially [apply] all relevant statutory factors to the present case?

Father's Brief at 10-12 (some capitalization omitted).

We have explained:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard

to issues of credibility and weight of the evidence, we must defer to the [trial judge] who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) (quotations and citations omitted).

Section 5338 of the Child Custody Act ("the Act") provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011). Trial courts are required to consider "[a]ll of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted).

Section 5328(a) of the Act provides as follows.

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

- 5 -

which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

"The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in [Section 5337(h)]." 23 Pa.C.S.A. § 5337(i)(1).

Within Father's brief on appeal, Father challenges the weight the trial court afforded the evidence and contends that the trial court incorrectly weighed the evidence in Mother's favor. Essentially, Father claims that – as to almost every single custody and relocation factor – the trial court should have weighed the evidence so that the factor favored him. *See* Father's Brief at 1-62. However, our role as an appellate court is not to reweigh the evidence. Indeed, as we have explained, we may only review for an abuse of discretion. Further, we have observed:

> we consistently have held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

- 8 -

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quotations, citations, and corrections omitted).

In this case, after reviewing the briefs of the parties, the relevant law, the certified record, the notes of testimony and the opinions of the able trial court judge, the Honorable Cathleen Bubash, we conclude that Father is not entitled to relief and that Judge Bubash's opinions, entered on August 29, 2019 and November 6, 2019, meticulously and accurately dispose of Father's issues on appeal. Therefore, we affirm on the basis of Judge Bubash's thorough opinions and adopt them as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Bubash's August 29, 2019 and November 6, 2019 opinions.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020

- 9 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Leann Weber,
               Plaintiff,

v.

Daniel Kovacs,

               Defendant.

No.:  FD-13-000236-008

AND NOW, to wit, this 28th day of August 2019, after a one and ½-day trial and a review of the Parties' Memoranda of Law, Mother's request to relocate with the Minor child L.K. aged 4, (hereinafter referred to as "Child") is Granted.

## DISCUSSION

The court held an expedited 2 hour hearing on relocation hearing on June 4, 2019 which resulted in the June 19, 2019 Order permitting Mother to relocate with the minor Child. In making its determination, the Court specifically reviewed the relocation factors set forth in 23 Pa. C.S.A. 5337 and the custody factors set forth in 23 Pa. C.S.A. 5328. Following is an updated analysis after the full trial on the matter.

2

## Relocation Factors

1. **Nature, quality, extent of involvement and duration of the Childs relationship with party proposing relocation and the non-relocating party, siblings and other significant person.**

   The Child L.K. is very close with both parents. He did, however, spend the majority of overnights with Mother. Child has an older sibling B.S. who lives with Mother and with whom the court would like to ensure a relationship. This factor favors Mother.

2. **Age, developmental stage, needs of Child and the likely impact the relocation will have on Child's physical, educational and emotional development with consideration for any special needs.**

   The child does not have special needs. He does well here in Pittsburgh and presumably, will do well in North Carolina with Mother. He is currently preschool age, so any move will not disrupt his education. The most important issue is that he will miss his Father. The court believes that the custody provisions of this Order will help reduce this impact.

3. **Feasibility of preserving the relationship between the non-relocating party and Child through suitable custody arrangements.**

   Father has had very regular daytime with the Child in order to keep him out of daycare, which has been very helpful to the Child. Now that Child will be in preschool, this available time will be be curtailed. Father has had about 100 or so overnights per year. Mother's proposal gives Dad more than 107 overnights a year and is, therefore, a feasible way to maintain the relationship between Father and Child. The use of skype or face time will assist.

4. **Child's preference**

   The child loves both Parents and is too young to voice a credible position.

5. **Established patterns of conduct of either party to promote or thwart the relationship of Children and the other party.**

   Father has told the Child that Mom's fiancé is a 'stranger'; which scared the Child. Child is afraid to let Father know that he likes Mother's fiancé.

   Father is regularly and significantly late for exchanges. This factor favors Mother.

6. **Whether relocation will enhance the general quality of life for the party seeking relocation including but not limited to financial, emotional or educational benefits.**

   Mother credibly testified that her quality of life will improve if she moves. Mother's fiancé is a North Carolina Highway Patrolman, earning in excess of $80,000. Mother and her fiancé seem well suited and the Child does well with him. The Court was very favorably impressed with Mother's fiancé's demeanor and professionalism, as well as his relationship with Child. Of note, he has often made a point of deescalating what he viewed as Father's aggressive behavior. This helps both Mother and child.

7. **Whether relocation will enhance the general quality of life for the Children including but not limited to financial, emotional and educational benefits.**

   If the child moves, his life will be improved to the extent that Mother's is. He will, though, of course, miss Father very much. The Parties must manage this and help the child adjust. **The reasons and motivations of each party for seeking or opposing relocation.**

   Mother is engaged to Sean Bridges who lives in North Carolina. There did not seem to be any ill motive for her move. Father's opposition is because he loves his son and will miss him.

4

8. **Past and present abuse committed by apart or member of party's household and whether there is a risk of harm to the Children.**

This factor is not applicable.

## Custody Factors

**Factor 1: "Which party is more likely to encourage and permit frequent and continuing contact between the Child and another party."**

I believe that both Parties can encourage a relationship with the other, as they did so while in Pittsburgh.

**Factor 2: "The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child."**

Father has been aggressive in the past though not to the level of abuse.

**Factor 3 considers the parental duties performed by each party on behalf of the child.**

Both Parties do this.

**Factor 4 directs the Court to consider the need for stability and continuity in the Child's life.**

While a move will change things, it appears that Mother is making a good decision. The child is resilient and very capable of adjusting.

**Factor 5 directs the Court to consider the availability of extended family.**

In Pittsburgh, daycare was not necessary because Mother and Father worked together so that Father had Child often when Mother was working. Mother and Father both have family here. Mother has no family in North Carolina; however,

5

she may have the opportunity to stay at home with her child. The Court values the benefits that being with extended family may have on Child and how those relatives may form support systems for Parents. These benefits do not trump the importance of the Mother and Father to the Child.

**Factor 6 regards the child's sibling relationships.**

L.K. has an older sibling at Mother's home. At the time of trial, Mother was pregnant. These sibling relationships will be very helpful to Child.

**Factor 7 provides that the Court must consider the "well-reasoned preference of the Child, based on the Child's maturity and judgment."**

The child loves both Parents and is too young to voice a credible position

**Factor 8 directs the Court to consider the attempts of either parent to turn the child against the other parent.**

Father has discouraged Child from having a relationship with Mother's fiancé. This was inappropriate.

**Factors 9 & 10, address the parties' likelihood of maintaining a loving, stable, and nurturing relationship with the Child and which Party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child.**

Both Parties can do this. Father needs to improve his relationship and behavior toward Mother when he is frustrated. This factor favors Mother.

**Factor 11 concerns the proximity of the parties' residences.**

If Mother moves to North Carolina, as permitted, they will be very far away.

**Factor 12 requires the Court to consider each party's availability to care for the Child or ability to make appropriate child-care arrangements.**

Both Parties can do this when the child is in their care.

**Factor 13 regarding conflict between the Parties and the Parties willingness to**

**cooperate.**

There has been far too much conflict between the Parties, often initiated by Father. This must stop. This Factor favors Mother

**Factor 14 regards the history of alcohol and/or drug abuse between the parties.**

Not applicable

**Factor 15 goes to the mental and physical condition of a party or a member of a party's household.**

Not applicable

**Factor 16 refers to any other relevant factor.**

None

**CUSTODY ORDER FOLLOWS ON THE NEXT PAGE**

7

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Leann Weber,

                    Plaintiff,                    No.: FD-13-000236-008

        v.

Daniel Kovacs,

                    Defendant.

## FINAL CUSTODY COURT ORDER AMENDED
### (FACTOR DISCUSSION ON PRIOR PAGES)

And Now this 28th day of August 2019, regarding custody of L.K. (aged 4), It is hereby Ordered as follows:

## I.    LEGAL CUSTODY

The Parties shall continue to share **joint legal custody in all areas except as stated below** of their Minor Child L.K., aged 4. Joint legal custody means that both parents have the right, duty and responsibility to participate in the decision-making process on issues involving the Child.

Joint legal custody also means that both parents shall be entitled to equal **access** to the Child's important records, including records of medical and dental treatments, school records and records of activities. It is each parent's responsibility to request copies of the Child's school schedule, special event notifications, report cards, standardized test scores, meeting notices and other similar items directly from the Child's school. Each parent shall notify the other of any appointments that he or she has made on behalf of the Child with medical, dental, optical, psychological or other healthcare providers, as well as any appointments, meetings or conferences with any educational provider Such

8

notice must be given sufficiently in advance so that the **non-scheduling parent may attend if he or she wishes to do so**. Each parent shall provide the other with at least one (1) week advance notice of school or extra-curricular activities whenever possible. It is Ordered that 'Our Family Wizard' be used for this purpose.

The parent then having physical custody, consistent with the other provisions of this Order, shall make ministerial decisions involving the Child's day-to-day living.

II.   **PHYSICAL CUSTODY**

1.   The parties shall share legal custody of the minor child.

2.   Mother shall have primary physical custody.

3.   Father shall have partial physical custody, in Pittsburgh, as follows:

a. From the first Saturday in June until the third Saturday in August, each year.

b. One weekend per month in September, October, February, March and May, each year, as agreed upon by the parties.

c. From the Wednesday before Thanksgiving until the Sunday after, each year.

d. From the first day until the second to the last day of holiday break starting in December and ending in January.

e. From Good Friday through the day before spring break ends in April.

f.   At any other times, as the parties may agree.

g.   Mother shall be responsible for all travel related to Father's periods

9

of partial custody, including costs Unless Father travels to N. Carolina to see the Child.

h. If Mother travels to Pittsburgh with the Child, Father shall be provided with 50% of the overnights available. If Father is working, Mother may have Child in the daytime.

## III. Miscellaneous

i. Father shall have FaceTime calls with the minor child each evening while in Mother's custody prior to bedtime.

j. The parties shall consult each other with respect to the education and religious training of the Child; the general welfare of the Child; the medical care of the Child; and other like matters of importance affecting the Child. The education, development, health and well-being of the Child shall be the paramount consideration of the Mother and the Father.

k. Each party shall, at all times, keep each other informed of his or her place of residence and telephone number and shall promptly notify the other of any change, giving the address of the new place of residence and the new telephone number. Each party agrees to keep the other informed of the whereabouts and activities of the Child while with that party. They mutually agree that if either of them has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the Child,

10

the Mother or Father, as the case may be, shall promptly notify the other of such circumstances.

l.  Each party shall have the obligation to have the Child ready for beginning and the end of scheduled periods of partial custody and to encourage them to participate in the successful implementation of the plan ordered by the Court. While in the presence of the Child, neither of the parents nor significant others shall make any remarks or do anything disparaging, which can in any way be construed as derogatory or uncomplimentary to the other parent and it shall be the duty of each parent to uphold the other parent as one whom the Child should respect and love.

m.  The Parties to use OFW to choose specific times for all meetings and to communicate about important matters relating to the child.

n.  Child is to be enrolled in a preschool in N. Carolina.

o.  This Order shall remain in full force and effect until further Order of Court or written agreement of the parents.

By the Court:

_____
J.

11

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Daniel Kovacs

                    Plaintiff,

          v.

Leann Weber

                    Defendant.

No.: FD-13-000236
Sup. Court No: 1462 WDA 2019

OPINION

November 6, 2019                                    Judge Cathleen Bubash

Father, Daniel Kovacs (hereinafter "Father") has appealed from my August 28, 2019 Custody Order granting Mother, Leann Weber's ("Mother") request to relocate to North Carolina with the parties' son, L.K., age 4 ("Child"). Because my Order was within my discretion and is in Child's best interest, it should be affirmed.

## Background

The parties were never married. They were involved in an on-again off-again relationship beginning in 2010 and were living together when Child was born, separating not long after. Their relationship was tumultuous and their first custody order evolved out of the settlement of a Protection from Abuse through a Non-PFA Consent Agreement.

Mother has always had primary custody of Child, with Father having approximately 100 overnights per year. Father, however, also exercised custody most weekdays while Mother was working as the parties agreed this was

2

preferable to Child being in daycare.

Mother worked as a dental hygienist and Father is a self-employed personal trainer with flexible hours. Mother has an eleven year old daughter from a former relationship; Father has no other children. Both parties have extended family in the Pittsburgh area. Approximately a year ago, Mother met Sean Bridges at a wedding and the two began a relationship. Mr. Bridges lives in North Carolina where he is a state trooper. The two became engaged to be married[1] and Mother is expecting his child. Mother filed a Notice of Proposed Relocation on February 6, 2019 and Father filed a timely counter-affidavit.

An expedited two hour hearing was held on Mother's petition on June 4, 2019 and I permitted her to relocate by my Order of Court dated June 19, 2019. Mother then moved to North Carolina with Child.[2] Father filed a Complaint for Custody as well as a Motion for Reconsideration and a full trial was scheduled. After a one and a half day trial and consideration of a post-trial Memorandum of Law submitted by Father, I entered my August 28, 2019 Order, again granting Mother's request to relocate and setting forth a comprehensive custody schedule for the parties. In making my decision, I performed an analysis of the custody factors of 23 Pa.C.S.A. §5328 and the relocation factors of §5337.

This appeal followed. Father has asserted that I committed seventeen (17) separate errors. He asserts that I erred or abused my discretion in my analysis of both the 23 Pa.C.S. §5337 relocation factors and the custody factors of 23 Pa.C.S. §5328, as well as asserting that I failed to apply those statutes impartially and ignored evidence.

---

[1] Mother testified that the couple became engaged over the Christmas holiday. Father asserts it was later, after the request for relocation. I found Mother credible on this issue but the date of their engagement played a minimal role in my analysis.

[2] Mother moved earlier than originally contemplated causing an unfortunate gap in Father's custody

3

## Discussion

While I will address Father's assertions of error generally below, I first note that while I found both of these parents to be competent and committed parents who both want the best for Child, my role is to determine what is in the best interest of the Child, not the parents. These parties have historically had a very difficult time co-parenting Child due to their inability to properly communicate with each other. Fault for this lack of communication lies with both parties.

I did, however, find Mother's descriptions of the parties' day to day interactions with Child and with each other to be more credible than Father's. I also found Father's testimony regarding his consistent lateness in picking up and returning Child from his periods of custody not to be credible. With regard to the parties' testimony concerning Father's aggressive tendencies toward Mother and her fiancé, I also found Mother to be more credible. On issues of credibility and weight of the evidence, the Superior Court defers to "the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Billhime v. Billhime*, 869 A.2d 1031, 1036 (Pa.Super.2005) (citation omitted). In this case, I found that Father could see only his good qualities as a Father, but also artificially and negatively portrayed Mother and attempted to negate her very real role in the Child's life as her primary custodian.

In the first twelve paragraphs of his 1925(b) Statement, Father alleges I failed to properly weigh and apply both the statutory custody factors of 23 Pa. C.S. §5328 and the relocation factors of §5337. I emphasized the factors which I found were entitled to the most weight in this case. "It is within the trial court's purview as the finder of fact to determine which enumerated best interest factors are most salient and critical in each particular child custody case." *M.J.M. v. M.L.G.*, 63 A.3d 331, (Pa. Super.2013); app. den. 68 A.3d 909.

4

## A. Relocation

Father asserts that I erred by finding that Relocation Factor 1 favored Mother because I did not give "proper weight and consideration to the Father's role in the child's life." I did, in fact, recognize Father's significant role, but also found Child has spent a majority of his overnights with Mother, who has been his primary custodian for his entire life. He also has an older sibling who lives with Mother and will soon have an additional sibling who will be living with Mother, so I found this factor weighed in her favor. Factor 1 requires that I examine the "nature, quality, extent of involvement, and duration of the Child's relationships" not just with the parents, but with siblings and other significant persons. I found this factor to favor Mother.

Likewise, contrary to Father's assertion that I failed to "take into account" Child's contacts with extended family, I did consider that Child has extended family which act as a support system in the Pittsburgh area and none in North Carolina. I found Mother credible, however, when she described the visits her mother and other relatives have made and will make to North Carolina. Mother's testimony demonstrated that she understands the importance of family and will preserve Child's connections to his extended relations. She said, of maintaining those ties: "So family – we don't lose ties because we moved. Our relationships are still intact."(TR. 8/20 p. 149). Additionally, my Order grants Father extended periods of custody in Pittsburgh and he has also indicated he will preserve Child's relationship with both his and Mother's extended family. I found, however, Child's relationships with his siblings to be more important than his relationship with his cousins and other extended relations when weighing this factor. Father appeared to give no importance to Child's relationship with his sibling due to their age difference (TR. 8/20 p. 81-82).

5

Father next argues that I erred in my analysis of Factor 3 by determining that Mother's proposal provides Father a feasible opportunity to preserve his relationship with Child. Mother's proposal and my Order provide Father with more overnights than he had before the relocation. He is provided long periods of custody during holidays, summer, and long weekends, regular telephone and Facetime contact, and additional periods of custody should he travel to North Carolina to visit Child. Father has a flexible schedule as he owns his own business and could make arrangements to travel to North Carolina.

I am cognizant that the time Father has spent with Child, which was almost daily, will be impacted by the relocation. As I noted in my Order, however, this daily contact would have been curtailed anyway as Child began attending school. The custody schedule set out in my Order will provide Father with a feasible way of maintaining his meaningful relationship with Child.

Next, Father focuses on my analysis of Factor 5, whether either party's conduct has demonstrated an attempt to "thwart the relationship of Children and the other party." I found that two separate aspects of Father's behavior resulted in this factor weighing in Mother's favor. First, Mr. Bridges' credible testimony made clear that Father was antagonistic toward Mother's fiancé on numerous occasions and behaved toward him in an unfriendly fashion in front of Child. (TR. 8/20p. 129-131, 134-135). Father also told Child that Mr. Bridges was a "stranger" which I found was intended to cause Child to fear and/or mistrust Mr. Bridges. (TR 6/4 p. 113, TR. 8/20 p. 100). Secondly, Father was perpetually and significantly late for custody exchanges, often more than an hour. This caused Mother to be in stressful situations where she had to get coverage for Child so she could make it to work, or where Child was returned close to bed time, rather than at an hour when he and Mother could enjoy an evening together. This behavior happened too consistently to be mere inadvertence. Father himself testified that

6

he was often late because he was eating dinner with Child. I found that this behavior was purposeful and demonstrated that Father holds Mother in disdain.

In the fourth paragraph of his Statement, Father conflates these two behaviors. I did not find, nor did I state in my Order that, *by being late*, Father attempted to turn Child against Mother's fiancé. I found, instead, that Father behaved – both by acting aggressively toward Mr. Bridges and in disrespecting Mother's time with Child – in a manner which would serve to thwart the relationship between Child and Mother as well as between Child and Mr. Bridges. Conversely, Mr. Bridges commendably behaved in a manner designed to de-escalate the strife Father's behavior was causing.

Father also claims I erred by finding Child's life would be enhanced by the move as contemplated by Factor 7. As the party proposing relocation, Mother bears the burden of proving relocation will serve the children's best interests. *See* 23 Pa.C.S.A. § 5337(i), *S.J.S. v. M.J.S.,* 76 A.3d 541, 551 (Pa. Super. 2013). I found that Mother met her burden. I found that Child's life will be enhanced by the enhancement of Mother's life, both financially and emotionally. Mother testified that she will be able to stay at home for a time with Child and his new sibling due to her fiancé's sufficient income, which will be helpful for Child's transition. (TR. 8/20 p. 159). Additionally, Mother and her fiancé seem well suited and demonstrated a caring and gentle attitude toward each other which will be a good atmosphere for Child to learn about adult relationships.

I acknowledged that Child will miss his Father and that Father provided significant and beneficial things to Child's life. He will still be able to do so under the custody terms of my Order. Child will not have daily contact with his cousins and extended family with the relocation, but he will have daily contact with his siblings which I deemed to be more important. He will be able to maintain his relationships with his cousins during holidays and extended visits to Pittsburgh

7

In all, I found that the relocation factors primarily favored Mother. The terms of my Order will allow Mother to have happiness in her new marriage and new baby which will be beneficial to Child and his happiness as well, while also allowing Father to maintain a significant and meaningful relationship with his son.

## B. Custody factors

Father next finds fault with my analysis under custody factors 2, 4, 5, 8, 9, 10, 11, and 13. In essence, all of his complaints come down to a disagreement with my determination that the lion's share of the problems between the parents were caused by Father, who I found to be both passively and actively aggressive in his behavior toward Mother and her fiancé, both important people in his son's life.

The parties both testified that they had a difficult time communicating. I did not conclude that all fault fell to Father. I did find from the testimony, however, that it was Father who exacerbated the situation by being consistently late, by attempting to thwart the relationship with Mother's fiancé, by acting in an aggressive manner at exchanges, and by interfering with Mother's communication with Child when he was in Father's custody. (TR. 8/20 p. 144). Moreover, despite being ordered to do so on more than one occasion since April 2019, Father refused to communicate with Mother using "Our Family Wizard", only registering for it on the day prior to trial in August, which could have eliminated or reduced some of the breakdown in communication. (TR. 8/20 p. 92-93, 141-142).

Additionally, I found Father's fear that Child will lose his religion, lose his connection with family, not receive a good education, and not be properly parented if he relocated with Mother to be exaggerated. His attempts to paint Mother as mentally imbalanced, unstable, flighty and promiscuous, likewise, were not realistic. (TR. 8/20 p. 80-81, 169-170).

8

Father complains that I did not find that Factor 11 regarding distance and proximity precluded relocation. Many relocation cases result in a parent living a great distance from a Child. But distance is but one of the factors to be considered. When weighed against the factors to which I gave greater weight, this factor was less important.

Importantly, I found, based on the testimony, that Factor 1 of the custody factors was more important and that, of either party, Mother was more likely to encourage a relationship with Father, as evidenced by her willingness to provide Child's transportation to visit with Father in Pittsburgh, as well as providing him with an adequate substitute for regular access – including extensive holiday and summer custody, and liberal custody in North Carolina. In contrast, Father proposed to only allow Mother to exercise partial custody of Child only in Pittsburgh if her relocation petition was denied. (TR. 8/20 p. 86). It was only after prodding that he agreed Child could spend summers and holidays in North Carolina with Mother. (TR. 8/20 p. 87-88).

My review of many of the custody factors resulted in an almost neutral balance between the parties, but the relocation factors favored Mother as did the factors dealing with attempts to thwart the relationship with the other parent.

## C. Father's Remaining Complaints

In paragraphs 8 through 12 on the third page of his 1925(b) Statement, Father complains that I did not properly weigh Mother's decision not to seek employment in North Carolina and that I failed to consider that she had been involved in "significant relationships" over the past several years. He also complains that I did not consider Child's upcoming educational needs or that Mother was not yet married and that she and her fiancé had changed addresses since the filing of the Relocation Notice. Lastly, he complains that I was not impartial in my application of the relevant statutory factors.

Mother indicated in her initial Notice of Relocation that she was seeking employment as a dental hygienist in North Carolina. Afterwards, Mother decided not to seek employment but to stay home with her children. I did not find that this indicated she had engaged in deceit or that she could not make up her mind. She and her fiancé ultimately purchased a lot and new home in a new development. I did not find this to be concerning either. (TR. 8/20 p. 115).

I, likewise, did not find the fact that Mother dated two men in the three years the parties were apart to be evidence of promiscuity, flightiness or instability, which seemed to be the inferences Father expected me to draw.

Lastly, Father questions my impartiality in the application of the statutory factors. As I stated above, and as I also stated in the courtroom and in my Order, I found both parties to be competent, loving parents who care deeply for their Child. In this case, I had to choose which parent would be the primary custodian and where the Child should live. On balance, I found that it was in the Child's best interest to remain with the parent who had always been his primary custodian and that he should live with Mother and his siblings in the home she is making with her new husband-to-be. That I did not rule in Father's favor is not evidence of bias.

## Conclusion

Because I analyzed this case in light of the relevant statutory factors and because my August 28, 2019 Custody Order is supported by the evidence and serves the best interests of Child, it should be affirmed.

BY THE COURT:

10