J-A08004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.M. | : | |
| | : | |
| Appellant | : | No. 1390 WDA 2021 |

Appeal from the Order Entered November 1, 2021
In the Court of Common Pleas of Bedford County Civil Division at No(s):
704-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  April 26, 2022**

T.M. (Mother) appeals from the custody order, dated October 28, 2021, and entered on November 1, 2021, directing that D.W. (Father) shall have primary custody of the parties' child, L.W. (Child), with Mother having partial custody on three out of four weekends during the school year.  During summer vacation periods, Mother shall have primary custody of Child, while Father shall have partial custody on various weekends.[1]  After review, we affirm.

In the Pa.R.A.P. 1925(a) opinion, dated December 16, 2021, the trial court provided a brief overview of this matter, stating:

The [C]hild was born out of wedlock [i]n August [of] 2014.  The Father filed a Complaint for Custody and Petition for Special Relief on August 20, 2020, asking the [c]ourt to continue the informal agreement of the parties wherein the [C]hild would continue to reside primarily with Father during the school year, attend the Bedford Area School District and spend most weekends with

_____

[1] The parties share legal custody of Child.

[Mother]. Thereafter, [Mother] filed multiple Petitions for Special Relief. Ultimately, [Mother] was seeking primary physical custody. Whereas Father was seeking to retain primary physical custody during the school year with one (1) weekend each month and [Mother] would have physical custody [all] other weekend[s] of each month, as well as a weekly rotation of custody during the summer months. Custody hearings were held on August 11, 2021[,] and October 28, 2021[,] and this [c]ourt entered a custody [o]rder on October 28, 2021. The instant appeal was timely filed on November 23, 2021.

Trial Court Opinion (TCO), 12/16/2021, at 1-2 (unnumbered) (footnotes omitted). The rest of the court's opinion includes the list of Mother's issues and the court's statement that it "placed its reasoning on the record following the hearing held on October 28, 2021…." *Id.* at 3 (citing N.T., 10/28/2021, at 57-65). Essentially, the notes of testimony contain the court's review of the custody factors listed at 23 Pa.C.S. § 5328(a)(1)-(16).

We now turn to the issues Mother sets forth in her brief.

1. Whether the trial court erred in determining the best interest of the [C]hild would best be suited by residing with Father/Appellee, based upon a totality of the circumstances as evidenced by a review of the custody factors.

2. Whether the trial court erred by indicating that factor three, concerning parental duties, favors the Father/Appellee only because the Father/Appellee has had custody up until that time.

3. Whether the trial court erred by indicating that factor four favors Father/Appellee because the [C]hild has consistently attended school in Bedford Area as he has been residing in Bedford, PA.

4. Whether the trial court erred by indicating that factor nine favors Father/Appellee because the [C]hild has already been residing with Father/Appellee, and Father/Appellee can provide a much more stable relationship due to the [C]hild already being located there.

5. Whether the trial court erred by indicating that factor ten favors Father/Appellee due to Father/Appellee already having custody.

6. Whether the trial court erred by weighing the factors inappropriately as it appears to give Father/Appellee on the custody factors due to Father/Appellee having primary custody at time of hearing [*sic*].

Mother's brief at 4-5.

The scope and standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa. Super. 2013) (quoting ***J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa. Super. 2011) (citation omitted)).

"[W]hen making a custody award, '[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.'" ***Id.*** at 335. The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a), which provides as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

As noted above in her list of issues, Mother acknowledged that many of the factors did not favor either party or were even. However, she contends that the trial court erred in finding that factors (3), (4), (9) and (10) favored Father. Specifically, with regard to these four factors, the court stated:

The third factor is the parental duties performed by each party on behalf of the [C]hild. It seems to me that the [F]ather has been the primary custodian for several years now, and has performed parental duties on behalf of the [C]hild, and the [C]hild appears to have a fairly consistent routine at the [F]ather's house. He appears to be thriving there. I would also note that the [M]other, at least in the last few years[,] has consistently had custody of the [C]hild on the weekends. And it would seem to me that[,] during her periods of custody[,] she does certainly perform parental duties on behalf of the child.

The fourth factor is the need for stability and continuity in the [C]hild's education, family life and community life. The testimony has revealed that this [C]hild has consistently attended school in

the Bedford School District and he appears to be doing quite well. He is reportedly a very social child, makes friends easily and is involved with some extra-curricular activities. The [M]other did express concern as to the [C]hild missing school or being tardy on several occasions during the school year last spring, but it would seem to me as though that does not appear to be a current issue this fall. And the [c]ourt also heard testimony that the [C]hild, as I said, appears to be very social and friendly, and that he's easily made friends both here in Bedford County, as well as[] where his [M]other lives in [Lemoyne].

. . .

The ninth factor is which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the [C]hild, adequate for the [C]hild's emotional needs. It seems pretty clear to me that everybody involved in this case[,] or everybody involved with this [C]hild[,] loves him dearly. I think that the [F]ather, though, has demonstrated a bit more stability for the [C]hild than the [M]other has in recent years. Prior to moving to [Lemoyne] in, I believe, September of 2019[,] the [M]other admittedly stated that she was not doing well, and at times wasn't consistently in the [C]hild's life, at least during the summer prior to her move. As I've previously indicated in those intervening years at least [*sic*] September of 2019, Father has consistently had primary custody and consistently met the [C]hild's education needs, his daily physical needs, his emotional needs, as well as his medical needs. But again, I don't want to minimize the [M]other's involvement. Clearly[,] she's been involved with the [C]hild. But I would just indicate it seems to me that the [F]ather has been more stable in that regard.

And actually[,] that rationale I just provided also somewhat addresses the tenth factor, which is which party is more likely to attend to the daily, physical, emotional developmental, educational and special needs of the [C]hild.

N.T., 10/28/2021, at 59-60, 61-62.

Now we turn to the issues raised by Mother in her brief, which she acknowledges all concern the same argument. ***See*** Mother's brief at 9. Mother summarizes this argument as follows:

- 6 -

The [l]ower [c]ourt erroneously gave Father preference on factors three, four, nine and ten, thus awarding him primary custody on the sole basis that the [C]hild had been residing with Father previous to the hearing. The [l]ower [c]ourt found that Mother is just as capable as providing for the [C]hild as Father, such as performing parental duties, maintaining loving relationships, etc., however, Father was favored only because the [C]hild had been residing with [him for] a period of time prior to the hearing. The [c]ourt cannot provide this favoritism to a parent due to them having more time with a child when the [c]ourt specifically finds that Mother is equally capable of performing these duties herself. For the [c]ourt to award primary custody to Father was a clear abuse of [its] discretion; therefore, the [l]ower [c]ourt erred.

*Id.*

Underlying this argument is Mother's contention that the trial court "improperly gave too much credence to the existing custody of the [C]hild at the time of the hearings." *Id.* at 10. She also asserts that the trial court "placed [an] inappropriate [amount of] weight [on] the fact that Father had been the primary custodian for several years[] and, therefore, performed the majority of the parental duties on behalf of the [C]hild, plus the [C]hild appeared to have a fairly consistent routine while at the Father's house." *Id.* at 11. Essentially, each of Mother's arguments directed at each issue rests on her position that the trial court "weighed too heavily in favor of [Father] only due to him having custody of the minor [C]hild at the time of the hearing." *Id.* at 12. Mother also contends that her life is more stable than Father's because he is relying on his grandmother for financial assistance as he is not presently employed. Additionally, Mother's arguments center on her

contention that many of the factors in section 5328(a) should have been found to favor her, which is contrary to the trial court's conclusions.

Based upon our review of the record, we conclude that the trial court considered all relevant factors and that its findings are supported by the record. Mother is primarily requesting that we reject the trial court's findings and credibility determinations and accept the findings that she proposes. In other words, Mother is requesting that this Court make independent findings rather than accept the trial court's findings that are supported by competent evidence in the record. We cannot do so. Rather, as we stated above,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first hand.

*J.R.M.*, 33 A.3d at 650. Moreover, we recognize that this must have been a difficult decision for the trial court in that both parents love their Child and wish to provide Child with a good life. As this Court has stated, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Because we do not determine that the trial court's conclusions are unreasonable in light of the sustainable facts, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2022